STATE OF HAWAII, Plaintiff-Appellee, *v.* KEITH T. MORISHIGE, Defendant-Appellant

NO. 7772

(CR. NO. 52449)

OCTOBER 27, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., AND RETIRED JUSTICES OGATA AND MENOR ASSIGNED TEMPORARILY

OPINION OF THE COURT BY NAKAMURA, J.

Defendant-appellant Keith T. Morishige (defendant) was convicted of Assault in the First Degree and Attempted Assault in the

First Degree after a jury trial in the Circuit Court of the First Circuit. He was further adjudged a persistent offender, as defined in HRS § 706-662(1), and a multiple offender, as defined in HRS § 706-662(4),[1] and sentenced to an extended term of imprisonment for twenty years, without possibility of parole for a period of ten years.[2] His appeal raises several questions concerning the trial and one related to the imposition of sentence. From a review of the record, we conclude the trial court committed no reversible error in the course of trial. But we are of the opinion that it should not have foreclosed defendant's attempts to demonstrate the ineffectiveness

---

[1] HRS § 706-662 (1978) reads in relevant part:
Criteria for sentence of extended term of imprisonment for felony. The court may sentence a person who has been convicted of a felony to an extended term of imprisonment if it finds one or more of the grounds specified in this section. The finding of the court shall be incorporated in the record.
(1) Persistent offender. The defendant is a persistent offender whose commitment for an extended term is necessary for protection of the public. The court shall not make such a finding unless the defendant is twenty-two years of age or older and has previously been convicted of two felonies committed at different times when he was eighteen years of age or older.

. . . .

(4) Multiple offender. The defendant is a multiple offender whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted. The court shall not make such a finding unless:
(a) the defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or
(b) the maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively would equal or exceed in length the maximum of the extended term imposed, or would equal or exceed forty years if the extended term imposed is for a class A felony.

[2] HRS § 706-661 prescribes extended indeterminate terms of imprisonment "in the cases designated in section 706-662."
HRS § 706-660.1(b) provides that a person convicted of a second firearm felony offense shall be sentenced to a mandatory term of imprisonment. It reads in pertinent part:
Sentence of imprisonment for use of a firearm in a felony. . . .
(b) A person convicted of a second firearm felony offense as provided in section (a), herein, where the person had a firearm in his possession and threatened its use or used the firearm while engaged in the commission of the felony, shall be sentenced to a mandatory term of imprisonment the length of which shall be as follows:
(1) For a class A felony — 10 years; and
(2) For a class B felony — 10 years.

of counsel in prior cases upon which the extended and mandatory term of imprisonment was predicated. We therefore set aside the sentence and remand the case for resentencing.

## I.

The defendant, a previously convicted felon, shot Alvin Morishige, his brother, and attempted to shoot Linnell Endo, his brother's girlfriend, with a rifle on November 21, 1978. The first count of the indictment returned by the Grand Jury charged the defendant with a violation of HRS § 134-7(b), Possession of Firearm by a Person Convicted of Certain Offenses. The indictment's second and third counts charged him with Attempted Murder in violation of HRS §§ 705-500 and 707-701. On defendant's motion, the unlawful possession of firearm charge was severed from the attempted murder charges for trial purposes. However, he entered a guilty plea on the firearm offense and proceeded to trial on the offenses of attempts to commit murder. The trial jury found him guilty of lesser included offenses of Assault in the First Degree and Attempted Assault in the First Degree, rather than Attempted Murder.

The State subsequently moved for the imposition of an extended term of imprisonment pursuant to HRS §§ 706-661, 706-662(1) and 706-662(4) and for the imposition of a mandatory minimum term pursuant to HRS § 706-660.1(b)(2). The motions were granted after a consolidated hearing on the motions, and defendant was sentenced to prison for twenty years with no possibility of parole for a period of ten years. The defendant's timely appeal to this court followed.

The questions posed for determination, in our view, are:

1. Whether the trial court erred by not allowing defendant twelve peremptory juror challenges pursuant to Rule 24(b), Hawaii Rules of Penal Procedure (HRPP), and HRS § 635-30, since conviction of the offenses charged would have subjected defendant to life imprisonment under the provisions of HRS §§ 706-661 and 706-662.

2. Whether the trial court erred in permitting testimony that the defendant claims was not disclosed to him in response to a pre-trial request made pursuant to Rule 16, HRPP.

3. Whether the trial court abused its discretion by refusing to

grant a motion for mistrial after an impaneled juror observed defendant in shackles outside the courtroom during the trial.

4. Whether the trial court abused its discretion by refusing to grant a motion for mistrial after a court-appointed psychiatrist referred to defendant's record of prior criminal offenses in his testimony.

5. Whether the trial court should have permitted testimony on the claimed ineffectiveness of counsel in prior cases during the hearing on the State's motions seeking the imposition of an extended term of imprisonment and a mandatory minimum term.

## II.

### A.

Addressing the questions related to the conduct of the trial, we first consider the defendant's claim that he should have been allowed to exercise twelve peremptory juror challenges rather than the three permitted by the trial court. The argument he advances is that Rule 24(b), HRPP[3] and HRS § 635-30[4] entitled him to twelve peremptory challenges because the provisions of HRS §§ 706-661 and 706-662 prescribing extended sentences for persistent and multiple offenders subjected him to possible life imprisonment. Thus

---

[3] Rule 24(b), HRPP reads:

*Peremptory Challenges.* If the offense charged is punishable by life imprisonment, each side is entitled to 12 peremptory challenges. If there are 2 or more defendants jointly put on trial for such an offense, each of the defendants shall be allowed 6 peremptory challenges. In all other criminal trials by jury, each side is entitled to 3 peremptory challenges. If there are 2 or more defendants jointly put on trial for such an offense, each of the defendants shall be allowed 2 peremptory challenges. In all cases, the prosecution shall be allowed as many peremptory challenges as are allowed to all defendants.

[4] HRS § 635-30 is worded in nearly identical terms, and reads:

*Peremptory challenges, criminal cases.* In criminal cases, if the offense charged is punishable by life imprisonment, each side is entitled to twelve peremptory challenges. If there are two or more defendants jointly put on trial for such an offense, each of the defendants shall be allowed six challenges. In all other criminal trials by jury each side is entitled to three peremptory challenges. If there are two or more defendants jointly put on trial for such an offense, each of the defendants shall be allowed two challenges. In all cases the State shall be allowed as many challenges as are allowed to all defendants.

the offense charged, he claims, was "punishable by life imprisonment" and one for which twelve challenges are provided by statute and rule. While the proposition is not without appeal, it has been examined and rejected.

In *State v. Masaniai*, 63 Haw. 354, 628 P.2d 1018 (1981), the defendant-appellant and his co-defendant, who had been charged with three counts of robbery, were each permitted to exercise two peremptory challenges on voir dire pursuant to Rule 24(b), HRPP. On appeal, the defendant-appellant argued in the manner defendant does here that twelve challenges should have been allowed as "the court could have imposed a maximum term of life imprisonment pursuant to the multiple offender provisions of HRS § 706-662(4)." *Id.* at 357, 628 P.2d at 1021. But as we observed, "[a]t the voir dire stage, it is uncertain whether the extended term provision for a multiple offender is applicable." *Id.* We therefore concluded the charged offense governed the number of challenges on voir dire.

The conclusion that the number of challenges is fixed by the maximum penalty directly attaching to the charged offense is buttressed by the history of the rule, which was derived from Rule 24 of the Hawaii Rules of Criminal Procedure. The commentary to Rule 24(b), HRPP, as proposed, read as follows:

> Section (b) is the same as HRCrP 24(b). It was enacted into statute in 1972 and is found in HRS Section 635-30. Under the Penal Code, only murder carries a life sentence. Class A felonies are punishable by a life sentence only upon a finding that the defendant is a certain kind of offender, i.e., a persistent, multiple, dangerous or professional criminal, and apparently would not be entitled to 12 peremptories under the rule. Cf. Note to Rule 11(c)(2) commenting on the meaning of "maximum penalty" as not including any extended term which is based not on the offense itself but on the background of the defendant.

Hawaii Rules of Penal Procedure (Proposed Draft), June 1975, Commentary to Rule 24.[5] Hence, a defendant is entitled to twelve

---

[5] The note to Rule 11(c)(2) referred to in the foregoing commentary to Rule 24(b) reads:

> Subsection (c)(2) requires that the court inform the defendant of and determine that he understands "the maximum penalty provided by law for the offense

peremptory challenges on voir dire only when the charged offense itself carries a penalty of life imprisonment. And as the offense for which the defendant was indicted, attempted murder, was punishable by imprisonment for a maximum term of twenty years, he was properly allowed three peremptory challenges. *See State v. Alo,* 57 Haw. 418, 426, 558 P.2d 1012, 1017 (1976), *cert. denied,* 431 U.S. 922 (1977); HRS § 705-502 (1976).

### B.

The trial court's allowance of testimony by two "surprise" witnesses over the objections of defendant is raised next as reversible error. The claim of "surprise" stems from the State's neglect to disclose the names of the two and the nature of their anticipated testimony in advance of trial, despite a pre-trial request for particular information regarding prospective prosecution witnesses made pursuant to Rule 16, HRPP. Defense counsel was apprised of the prosecution's intention to call a firearms expert on the morning the trial began. That Elaine Uyehara would testify she had once heard the defendant say the shooting of his brother would be a mercy killing was communicated to counsel for defendant only a few days before trial.

Though the State failed to abide by the prescript for disclosure of relevant information upon due request, the violation of Rule 16 of itself did not serve to bar the proffered testimony. In *State v. Sugimoto,* 62 Haw. 259, 614 P.2d 386 (1980), the prosecution was guilty of a similar transgression of the rule. The trial court nonetheless permitted two witnesses whose names were not on the list of prospective witnesses submitted earlier to give evidence at trial, but only after measures to dispel the prejudicial effect of the tardy disclosure were

---

to which the plea is offered." This is new to HRCrP 11 and is derived from Proposed Federal Rule 11. In 1966 Federal Rule 11 was amended to add the requirement that the court determine that the defendant understands "the consequences of his plea." This is being further refined under Proposed Federal Rule 11. The objective is to insure that the defendant knows what penalty he faces in pleading guilty. The maximum penalty of which he is to be informed is that which is set "for the offense to which the plea is offered." This refers to the maximum penalty directly attaching to the offense itself and not to possible additional adverse ramifications of conviction nor to additional penalties such as extended terms based on the defendant's background.

taken.[6] In response to defendant's assertion on appeal that the proper course of action for the trial court was a declaration of mistrial, we said:

> [A] violation of Rule 16 does not warrant an immediate declaration of a mistrial by the trial court. The rule provides that where a party fails to comply with its terms "the court may order such party to permit the discovery, grant a continuance, *or it may enter such other order as it deems just under the circumstances.*" Rule 16(e)(8)(i), HRPP.

*Id.* at 262, 614 P.2d at 389 (emphasis in original).

The trial court here did no less to ensure that prejudice would not result from the tardy disclosure concerning the firearms expert. Defense counsel was afforded adequate time to interview him and to seek the services of another expert if counsel desired. Moreover, the court suggested the possibility of a continuance of trial to accommodate counsel if he actually encountered difficulties. No abuse of discretion has been demonstrated under these circumstances.

Although the prosecuting attorney also failed to inform the defense of his intention to have Elaine Uyehara relate the defendant's statement about "mercy killing" to the jury until a few days before trial, she was hardly a "surprise" witness. The record indicates her name was initially on the list of prospective witnesses for the defense. We discern no prejudice flowing from the fact that her name did not appear on the original roster of prosecution witnesses; the trial court's allowance of her testimony did not constitute error.

## C.

A claim of reversible error predicated upon the trial court's denial of a motion for mistrial after a juror purportedly observed the defendant "in chains" outside the courtroom on the second day of trial is advanced next. Defendant contends "in this case, the record

---

[6] Our opinion noted the trial judge's efforts in this regard as follows:

> The trial judge fully inquired into the circumstances surrounding the calling of Kahao and Ancheta. . . . The court also made every effort to allow the defense attorney to interview the unlisted witnesses. In this way the court below insured that the defendant-appellant was not surprised or prejudiced by the testimony of the two witnesses.

*State v. Sugimoto, supra,* 62 Haw. at 262, 614 P.2d at 389 (citations and footnote omitted).

viewed as a whole shows that there is a strong likelihood that this incident was prejudicial." He thus maintains the trial court erred by denying the motion for mistrial. The allegations of prejudicial effect, however, are not substantiated by the record.

Indulging in "some presumptions in favor of the integrity of the jury," we said in *State v. Hashimoto*, 46 Haw. 183, 191-92, 377 P.2d 728, 734 (1962), that it was "a far-fetched conjecture that jurors under oath would spontaneously harbor prejudice immediately upon seeing a defendant brought to court in manacles." *Id.* at 191, 377 P.2d at 734. And in *State v. Reverio*, 61 Haw. 95, 595 P.2d 1069 (1979), we concluded the trial court erred by dismissing the case on grounds that prospective jurors had observed the defendant in shackles prior to the commencement of trial. In our view, "a brief and fortuitous observation of defendant in shackles by jurors . . . [was] not prejudicial," and an affirmative showing of prejudice should have been required before the case was dismissed. *Id.* at 98, 595 P.2d at 1071. A juror's witnessing the defendant in shackles during the course of trial likewise "does not, *ipso facto*, raise a presumption of prejudice." *State v. Hashimoto, supra,* 46 Haw. at 191, 377 P.2d at 734. A demonstration of prejudice is also a requisite for a declaration of mistrial.

When the trial court was apprised that a juror "walked right by Mr. Morishige and Mr. Falk (a guard) while Mr. Falk was taking his leg irons off," counsel for defendant was permitted to examine the juror out of the presence of other jurors. The transcript of the voir dire examination discloses the juror was uncertain about what had transpired. His testimony was that he saw the defendant standing, a man bending down, and a woman standing nearby; he thought the defendant was being shackled, but was ambivalent in this regard. The juror spoke to no one else of the incident, and he was admonished not to relate its occurrence to anyone else. Significantly, no testimony regarding a prejudicial effect upon the juror or anyone else was elicited. And as no prejudice was demonstrated, there were no grounds for declaring a mistrial.

D.

1.

Defendant's final assertion of reversible error committed during

trial is premised on the admission of testimony concerning his prior criminal and anti-social conduct. Pursuant to a motion *in limine* presented by defendant, the trial court ruled before trial that evidence of his record of prior criminal offenses and incarceration would be excluded from trial. Nevertheless, the psychiatrist who was a rebuttal witness on behalf of the State was allowed to discuss the defendant's prior history of criminal and anti-social behavior in the course of his testimony. The receipt of such evidence, however, did not necessarily constitute reversible error.

"The admission of evidence which tends to prove the commission of crimes other than the crime charged gives rise to several problems." *State v. Iaukea,* 56 Haw. 343, 348, 537 P.2d 724, 729 (1975). For one, "[t]he jury may believe that the defendant is guilty merely because he is a likely person to do such acts." *Id.* And of course, a defendant cannot be expected to be prepared "to defend himself against the evidence of collateral crimes." *Id.* Thus courts following the common law tradition have generally closed "the whole matter of [the defendant's] character, disposition and reputation on the prosecution's case-in-chief." *Michelson v. United States,* 335 U.S. 469, 475 (1948);[7] *see also* Rule 404(a), Fed. R. Evid. and Rule 404(a), Haw. R. Evid.

But they have not foreclosed evidence of other crimes in all situations, for it unquestionably has evidentiary value beyond the substantiation of character, disposition, and reputation. Where, for

---

[7] Mr. Justice Jackson's eloquent statement of the relevant policy considerations in this situation was:

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, *Greer v. United States,* 245 U.S. 559, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

Michelson v. United States, *supra,* 335 U.S. at 475-76 (footnotes omitted).

example, such evidence may be relevant in establishing elements essential to the prosecution and its probative value outweighs the possible prejudice, courts have not displayed a reluctance to receive the evidence. Thus we concluded in *Iaukea* that the "testimony in controversy regarding other criminal acts allegedly committed by the defendant" was properly admitted — it was "relevant and material to the proof of an element of the crimes charged in the indictment." *State v. Iaukea, supra,* 56 Haw. at 351, 537 P.2d at 731. The element at issue was forcible compulsion, which we found was "wholly distinct from [the defendant's] propensity or bad character." *Id.* We further concluded the testimony probably could have been admitted under another widely accepted view, one we subsequently characterized as "the more restrictive view that evidence of other crimes is inadmissible except when it helps to establish one of five issues: intent, motive, absence of mistake or accident, identity, or common scheme or plan." *State v. Murphy,* 59 Haw. 1, 8, 575 P.2d 448, 454 (1978).[8]

2.

The testimony in question here was not adduced "on the prosecution's case-in-chief" to demonstrate the defendant was "by propensity a probable perpetrator" of the crimes charged by the indictment. *Michelson v. United States, supra,* 335 U.S. at 475. Pur-

---

[8] The discussion of these "two basic formulations" of the relevant rule of evidence in *Iaukea* was recapitulated in *Murphy,* where we said:

In *State v. Iaukea,* 56 Haw. 343, 537 P.2d 724 (1975), we noted the difficulties which may arise when evidence is introduced which tends to prove the commission of crimes other than those with which the defendant is charged. We went on to discuss in *Iaukea* the two basic formulations of the rule pertaining to use of evidence involving other crimes. Under the first formulation, which encompasses a more liberal approach, evidence of other crimes is deemed to be admissible if it is found to be relevant and to have a tendency to establish the offense charged. The second (or "alternative") formulation, which is most often recited by courts around the country, is the more restrictive view that evidence of other crimes is inadmissible except when it helps to establish one of five issues: intent, motive, absence of mistake or accident, identity, or common scheme or plan. While these five traditional exception categories are not intended to be exhaustive, courts which follow the alternative approach are usually reluctant to admit evidence of other crimes which does not fall within those categories.

State v. Murphy, *supra,* 59 Haw. at 8, 575 P.2d at 454.

portedly, it was elicited to rebut a clinical psychologist called by the defense who testified the defendant was suffering from an acute mental disorder that "prevented him from knowing right from wrong" and "from conforming his behavior to the requirements of the law" when the alleged offenses occurred.[9] The testimony that the defendant lacked a substantial capacity to appreciate the nature of his conduct and to make it conform to the requirements of law imposed an additional burden on the State. For it then became incumbent on the prosecution to negate the defendant's claim; the establishment of an element of the crimes had been placed in doubt by testimony that defendant was unable to form the requisite intent.

The thrust of the rebuttal testimony was that the defendant retained a substantial capacity to appreciate the wrongfulness of his conduct despite his drug dependency. The State's witness ascribed defendant's criminal behavior to an "anti-social personality" rather than the mental disorder described earlier by the defense witness. Defendant's prior history of criminal and anti-social behavior was cited in support of this opinion. This evidence, in our view, was relevant and had a tendency to establish the offenses charged; *see State v. Murphy, supra,* 59 Haw. at 8, 575 P.2d at 454; it could have gone to establish the necessary intent. *See State v. Apao,* 59 Haw. 625, 638, 586 P.2d 250, 259 (1978). Moreover, it was adduced to rebut a defense.

> Evidence of the prosecution tending to rebut a defense will not be excluded because it also tends to show the commission of another crime by the accused. Thus, where the accused asserted the defense of alibi, evidence of his commission of another crime was admissible to show that he was in the vicinity in question at the time of the crime charged; or where the accused asserted the defense of insanity, evidence which tended to show that he was sane was admissible even though it also tended to show that he was guilty of another crime.

1 C.E. Torcia, *Wharton's Criminal Evidence* § 258 (13th ed. 1972) (footnotes omitted).

---

[9] The precise diagnoses of defendant's mental disorder furnished by the clinical psychologist was: "a schizoid psychosis associated with drug intoxication, a schizoid personality disorder with drug dependency."

Though the defendant insists the evidence in question should not have been admitted because it was highly prejudicial, there is no reason for this court to disturb the determination of its admissibility. "The responsibility for maintaining the delicate balance between probative value and prejudicial effect lies largely within the discretion of the trial court." *State v. Iaukea, supra,* 56 Haw. at 349, 537 P.2d at 729. No abuse of discretionary authority appears.[10]

### III.

We turn now from the defendant's assertions of trial error to the question posed on the imposition of the extended and mandatory term of imprisonment. The averment of prejudicial error here is premised on the trial court's rejection of testimony on the purported ineffectiveness of defendant's attorneys in prior convictions upon which the enhanced sentence was grounded.

### A.

### 1.

A hearing to determine whether an extended sentence should be imposed pursuant to HRS §§ 706-662(1) and 706-662(4) cannot be

---

[10] The trial here was conducted in 1979, before the effective date of the Hawaii Rules of Evidence. But we believe our holding would not have been any different even if the rules had been in effect.

Rule 404(b), Haw. R. Evid., provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible where such evidence is probative of any other fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

and Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Thus the Hawaii Rules of Evidence provide that evidence of other crimes is inadmissible to show the defendant is "by propensity a probable perpetrator" of the crime charged, but admissible to prove any other fact of consequence to the determination of the case, assuming of course, that the evidence is not unduly prejudicial.

equated "with the routine sentence of a trial judge who is vested with wide discretion in the sources and types of evidence which may be utilized by him in the proper disposition of convicted offenders." *State v. Kamae*, 56 Haw. 32, 38, 526 P.2d 1200, 1204 (1974). "Each of the subsections of § 706-662 requires the trial court to engage in a two-step process to impose a sentence for an extended term. The first step involves a finding by the court that the defendant is within the class of offenders to which the particular subsection applies." *State v. Huelsman*, 60 Haw. 71, 76, 588 P.2d 394, 398 (1978). If the court so finds, it must then decide whether the defendant's commitment for an extended term is necessary for the public's protection (where the extended term is sought under subsections (1), (2), (3), and (5)) or that his criminality is so extensive that an extended term is warranted (where the extended term is sought under subsection (4)).

The establishment of the defendant's status as a persistent or multiple offender at the initial step "involves 'historical facts', the proof of which exposes the defendant to punishment by an extended term sentence, similarly to the manner in which the proof of his guilt exposes him to ordinary sentencing." *Id.* at 79, 588 P.2d at 400. Hence, these facts must be established by proof beyond a reasonable doubt in a hearing where the ordinary rules of evidence apply. *State v. Kamae*, 56 Haw. 628, 635-38, 548 P.2d 632, 637-38 (1976).[11] And when prior convictions are used to enhance the penalty for another offense, the record in each case must "show that . . . [the defendant] was represented by counsel during . . . the alleged prior offenses of which he was convicted, or that he intelligently and voluntarily waived his constitutional right to counsel." *State v. Kamae, supra*, 56 Haw. at 638, 548 P.2d at 639. "To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense (see *Greer v. Beto*, 384 U.S. 269 [1966]) is to erode the principle of that case." *Burgett v. Texas*, 389 U.S. 109, 115 (1967).

---

[11] But the "procedural standards to which the second phase of an extended term sentence proceeding . . . [are] subject are those applicable to ordinary sentencing." State v. Huelsman, *supra*, 60 Haw. at 80, 588 P.2d at 400.

2.

This court has yet to pass on the procedural demands related to the imposition of a mandatory term of imprisonment under HRS § 706-660.1(b). But in *State v. Freitas*, 61 Haw. 262, 602 P.2d 914 (1979), we examined another mandatory sentencing statute, S.L.H. 1976, c.181 (subsequently codified as HRS § 706-606.5), and concluded "ordinary sentencing procedures should apply." *Id.* at 277, 602 P.2d at 925. For while the ultimate assessment of an extended term under HRS § 706-662 remains discretionary with the trial court, "Act 181 . . . is a mandatory sentencing statute . . . [that] admits of no such discretion." *Id.* Still, we decreed

> that before sentence may be imposed under Act 181, the defendant must be given reasonable notice of the intended application of Act 181; he must be given the opportunity to be heard; the fact of his prior conviction must be established by satisfactory evidence; and he must have been represented by counsel (or have knowingly and intelligently waived representation) at the time of his prior conviction.

*Id. See also State v. Caldeira*, 61 Haw. 285, 602 P.2d 930 (1979); *State v. Afong*, 61 Haw. 281, 602 P.2d 927 (1979). We likewise deem it essential in a hearing to determine whether a mandatory term is imposable under HRS § 706-660.1(b) that "the fact of prior conviction and the fact of legal representation or the waiver thereof . . . [be] properly presented to the court for its consideration." *State v. Afong, supra*, 61 Haw. at 284, 602 P.2d at 929.

B.

The historical facts to be established before the assessment of an extended term pursuant to HRS §§ 706-662(1) and 706-662(4) and a mandatory term pursuant to HRS § 706-660.1(b) are prior convictions in cases where the defendant was represented by counsel. The record in this case substantiates the prior convictions premised on guilty pleas entered by the defendant; it further reflects the presence of counsel in the previous cases. The defendant, however, maintains he was not afforded "effective" counsel when the guilty pleas were entered; he argues he should have been permitted to develop evidence demonstrating the inadequacy of the assistance provided.

The right to the assistance of counsel in a criminal case guaranteed by the United States and Hawaii Constitutions "is satisfied only when such assistance is 'effective'." *State v. Kahalewai,* 54 Haw. 28, 30, 501 P.2d 977, 979 (1972); *see Reece v. Georgia,* 350 U.S. 85, 90 (1955); *Glasser v. United States,* 315 U.S. 60, 69-70 (1942); *Avery v. Alabama,* 308 U.S. 444, 446 (1940); *Powell v. Alabama,* 287 U.S. 45, 57 (1932). That this right to effective counsel extends to a defendant pleading guilty to felony charges is also clear. *See McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970); *Stough v. State,* 62 Haw. 620, 618 P.2d 301 (1980).

The onus of proving ineffectiveness, however, rests with the defendant, *State v. Antone,* 62 Haw. 346, 348, 615 P.2d 101, 104 (1980), who faces a two-fold task:

> First, . . . [he] must establish specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment or diligence. *State v. Kahalewai,* 54 Haw. at 30, 501 P.2d at 979; *People v. Pope,* 23 Cal.3d 412, 425, 590 P.2d 859, 866 (1979). Second, . . . [he] must establish that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. *State v. Kahalewai,* 54 Haw. at 32, 501 P.2d at 980; *People v. Pope,* 23 Cal.3d at 425, 590 P.2d at 866. Where . . . [a defendant] successfully meets these burdens, he will have proven the denial of assistance "within the range of competence demanded of attorneys in criminal cases."

*Id.* at 348-49, 615 P.2d at 104 (footnote omitted). The defendant's burden is obviously a heavy one; he ought not be denied an opportunity to meet it.

Having found no error in the conduct of the trial, we affirm the defendant's conviction. The case, however, is remanded for resentencing.

*Christopher D. Ferrara (Robinson & Ferrara,* of counsel; *Walter R. Schoettle,* with him on the briefs) for defendant-appellant.

*Lila LeDuc (Arthur E. Ross* on the brief), Deputy Prosecuting Attorneys, for plaintiff-appellee.