STATE OF HAWAII, Plaintiff-Appellee, *v.* MICHAEL SMITH, aka Michael Calderon, Defendant-Appellant

NO. 9854

(CR. NO. 7656)

JANUARY 14, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

## OPINION OF THE COURT BY NAKAMURA, J.

Claiming a denial of his constitutional right to the effective assistance of counsel at trial, Michael Smith appeals from a judgment of conviction of Attempted Sodomy in the Second Degree entered by the Circuit Court of the Third Circuit.[1] Because we are convinced from a review of the record that the performance of defense counsel was not within the range of competence expected of lawyers in criminal cases, we vacate the judgment and remand the case for retrial.

### I.

The defendant was charged with attempting to engage in deviate sexual conduct with a person below the age of fourteen in violation of sections 705-500(1)(b) and 707-734(1)(b), Hawaii Revised Statutes (HRS), as amended.[2] He sought counsel to assist in his defense, and an attorney from the Public Defender's office was appointed to represent him. Since the defendant had been convicted previously of more than several offenses and arrested for others, including several sexually related offenses, the array of pre-trial motions filed by counsel included a motion in limine seeking to exclude testimony about other offenses allegedly committed by the defendant.

The motion was granted in part. Essentially, counsel succeeded in preventing the introduction of evidence of prior offenses that did not result in convictions, as well as that of prior convictions for crimes in which "fraud, deceit or other forms of dishonesty" were not implicated. The order entered by the circuit court also precluded references by the

---

[1]Defendant's counsel on appeal was not counsel at trial.

[2]The complaint filed against the defendant read as follows:
On or about the 8th day of October, 1983, in South Hilo, County and State of Hawaii, MICHAEL SMITH, aka MICHAEL CALDERON, did intentionally attempt to engage in deviate sexual intercourse with another person who is less than fourteen years old, by attempting to have [the victim], a person less than fourteen years old, suck his penis, and said act under the circumstances as he believed them to be constituted a substantial step in a course of conduct intended to culminate in the commission of the offense of Sodomy in the Second Degree, thereby committing the offense of Attempted Sodomy in the Second Degree, in violation of Sections 705-500(1)(b) and 707-734(1)(b), Hawaii Revised Statutes, as amended.

State to any prior incarceration of the defendant or any pending charge against him for lewdness or other sexually motivated conduct.[3] Before the case proceeded to trial, however, the court found it necessary to appoint other counsel to represent defendant.[4]

At trial the State adduced evidence from which a reasonable inference could be drawn that the defendant lured a five-year-old girl who had been playing at a playground in South Hilo to the "laundromat room" of a nearby hotel with intent to have the child perform an act of fellatio, but this design was foiled by the sudden appearance of the owner of the liquor establishment located above the basement room. The bar owner testified that when he opened the door to the room he saw the girl kneeling in a corner with her back to the wall. The defendant, the witness said, was in a crouched position over the kneeling child; her face, according to the witness, was several inches away from the defendant's groin area. When the bar owner approached the pair he saw the defendant's exposed and erect penis and the victim's frightened countenance.

---

[3]The circuit court's order in pertinent part provided:

With respect to paragraph 1 of Defendant's Motion In Limine, Defendant's Motion shall be granted unless the State can show that Defendant's prior crimes fall into the "other crimes, wrongs, or acts" exception of Rule 404 of the Hawaii Rules of Evidence.

With respect to paragraph 2 of Defendant's Motion In Limine, said Motion shall be generally granted. The crimes of Burglary in the First Degree and Second Degree do not *per se* involve dishonesty and are generally inadmissible. However, if the State has evidence that any of Defendant's prior burglary convictions involved fraud, deceit, or other forms of dishonesty, a court hearing, out of the presence of the jury, shall be held to determine whether said crimes will be admissible.

· With respect to paragraph 3 of Defendant's Motion In Limine, said Motion shall be granted.

With respect to paragraph 4 of Defendant's Motion In Limine, said Motion shall be denied subject to the State's ability to establish the proper factual basis at trial.

With respect to paragraph 5 of Defendant's Motion In Limine, Defendant's Motion shall be generally granted.

With respect to paragraph 6 of Defendant's Motion In Limine, Defendant's Motion shall be generally granted.

With respect to paragraph 7 of Defendant's Motion In Limine, said Motion shall be granted unless the Defendant introduces the subject and it relates to the proof or disproof of a material element of the offense.

With respect to paragraph 8 of Defendant's Motion In Limine, said Motion shall be granted unless the State can show that testimony relating to Defendant's "sexual problems" falls into an exception in the Hawaii Rules of Evidence.

[4]The Public Defender also represented a witness the State intended to call. The possible conflict of interest was obviated by the replacement of the Public Defender.

The defendant hurriedly attempted to cover the exposed organ and fled despite the witness' attempt to question him. However, he was apprehended shortly thereafter by the police and identified by the witness as the culprit.

Michael Smith testified he had no intention of engaging in deviate sexual activity with the victim, he did not ask her to perform an act of fellatio, and he was only exposing himself when the witness entered the "laundromat room." The testimony followed an opening statement delivered by counsel in which the defendant was characterized, *inter alia,* as a fantasizer, a former convict, a pervert, and an exhibitionist.[5] Counsel thus opened the defense of the charge of attempted sodomy by setting to naught his predecessor's effort to keep the jury from hearing evidence of certain aspects of defendant's criminal history, evidence which the former attorney and the trial court thought might be more prejudicial than probative. And he followed up by eliciting testimony from the defendant corroborating what he had imparted to the jury in his opening remarks. Though Michael Smith thereafter denied he had sodomy in mind and insisted he was only exposing his sexual organ to the little girl, the jury evidently found his testimony unworthy of belief and returned a guilty verdict.

---

[5]Counsel's opening statement contained the following remarks:

My client is a loner. He is in a sense a hermit, a fantasizer. My client will be telling you folks that he has had a very tragic and distorted background. He's never really had a family. His mother is an alcoholic. And he's always had a hang-up about sex. He's always fantasized being with either little boys or little girls. Sixty percent boys, forty percent girls. That's the kind of fantasies he's had.

He served time in prison before. But not for anything close to what we're charged with today, Attempted Sodomy in the Second Degree. He served time in prison at Oahu Prison. Served five years there. Just got out last year. Served time for burglaries. Also committed thefts in the past. He's done a whole bunch of stuff that you folks are going to be terribly offended by. But we picked you today because we feel that you folks will stick to what the evidence shows and not what my client's past background is. I just want to let you folks know now through my opening statement of this so that you folks don't get shocked by the testimony that will come out from my client.

Please understand that we say this to you only on the premise that we're giving you everything we got. We're putting everything out on the table. My client is not a nice guy. He's a pervert if you want to put it that way. But he's never, he's never committed anything like attempted sodomy before. He's flashed himself up on the U.H. Hilo campus before, he's been an exhibitionist, if you want to call it, but he's never done anything like go and attempt or sexually molest or commit a deviate act such as having a little girl, you know, with her mouth over his penis. Nothing like that.

 

Although the defendant urges a reversal of the judgment on grounds that the prosecution failed to demonstrate his intent to commit sodomy,[6] his primary contentions on appeal are that he was deprived of his constitutional right to counsel and he should be afforded a new trial.

## II.

The right of one accused of crime to be represented by an attorney "is a fundamental component of our criminal justice system." *United States v. Cronic,* 466 U.S. 648, ___, 104 S. Ct. 2039, 2043 (1984). But this right "cannot be satisfied by mere formal appointment," *Avery v. Alabama,* 308 U.S. 444, 446 (1940), for "the assistance of counsel . . . guaranteed by the United States and Hawaii Constitutions 'is satisfied only when such assistance is "effective."'" *State v. Morishige,* 65 Haw. 354, 369, 652 P.2d 1119, 1130 (1982), *quoting State v. Kahalewai,* 54 Haw. 28, 30, 501 P.2d 977, 979 (1972); *see McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970) ("the right to counsel is the right to the effective assistance of counsel").

When a denial of this right is raised, the question is "whether, viewed as a whole, the assistance provided [the defendant was] 'within the range of competence demanded of attorneys in criminal cases.' *State v. Kahalewai,* 54 Haw. 28, 30, 501 P.2d 977, 979 (1972) *quoting McMann v. Richardson,* 397 U.S. 759, 771, 90 S. Ct. 1441, 1449, 25 L. Ed. 2d 763 (1970)." *State v. Antone,* 62 Haw. 346, 348, 615 P.2d 101, 104 (1980). Of course, the "assistance need not be errorless nor will it be judged ineffective solely by hindsight." *Id.*

The burden of establishing ineffectiveness rests with the defendant. *State v. Morishige,* 65 Haw. at 369, 652 P.2d at 1130; *State v. Antone,* 62 Haw. at 348, 615 P.2d at 104; *State v. McNulty,* 60 Haw. 259, 269, 588 P.2d 438, 446 (1978). And his claim of inadequate assistance will be upheld only if he can show there were "specific errors or omissions . . . reflecting counsel's lack of skill, judgment or diligence[,]" and "these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. *State v. Kahalewai,* 54 Haw. at 32, 501 P.2d at 980; *People v. Pope,* 23 Cal. 3d at 425, 590 P.2d

---

[6]This contention is devoid of any merit.

at 866." *State v. Antone,* 62 Haw. at 348-49, 615 P.2d at 104 (footnote omitted).[7]

## III.

We are convinced from a review of the record that the assistance rendered by trial counsel was not within the range of competence demanded of attorneys in criminal cases and there were errors or

---

[7]Until 1984, "[w]ith the exception of Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), however, which involved a claim that counsel's assistance was rendered ineffective by a conflict of interest, the [Supreme] Court [did not] directly and fully address[] a claim of 'actual ineffectiveness' of counsel's assistance in a case going to trial." Strickland v. Washington, 466 U.S. 668, ___, 104 S. Ct. 2052, 2060 (1984) (citations omitted). In addressing the claim of ineffectiveness in *Strickland v. Washington,* the Court held "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at ___, 104 S. Ct. at 2061. "When a defendant challenges a conviction," the Court went on to say, "the question is whether there is a reasonable probability that, absent the errors [of counsel], the factfinder would have had a reasonable doubt respecting guilt." *Id.* at ___, 104 S. Ct. at 2066. Thus under the prevailing federal standard a defendant's claim of ineffective assistance is upheld only if he shows "that counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hill v. Lockhart, ___ U.S. ___, ___, 106 S. Ct. 366, 369 (1985) (quoting Strickland v. Washington, 466 U.S. at 687-88 and 466 U.S. at 694).

The *Strickland* test has been criticized as being unduly difficult for a defendant to meet. *See generally* Genego, *The Future of Effective Assistance of Counsel: Performance Standards and Competent Representation,* 22 Am. Crim. L. Rev. 181. In the writer's opinion:

One need not be a lawyer to appreciate the difficulty of meeting the prejudice requirement established by the Court. Given the inherent subjectivity of determining whether past results would probably have been different, defendants will successfully prove clear cases of prejudice only where there is evidence that they should not have been convicted.

*Id.* at 199 (footnote omitted).

The test for measuring ineffectiveness adopted by this court in State v. Antone, 62 Haw. at 348-49, 615 P.2d at 104, is not that declared by the Supreme Court in *Strickland v. Washington* and *Hill v. Lockhart.* But for purposes of judging claims of inadequate representation brought under article I, section 14 of the Hawaii Constitution, we shall continue to apply the standard enunciated in *State v. Antone.* Inasmuch as the defendant avers he was denied his right to the effective assistance of counsel under the Hawaii, as well as the federal, Constitution, we follow *State v. Antone* here.

omissions reflecting a lack of skill or judgment that substantially impaired a potentially meritorious defense.

### A.

Michael Smith's defense to the charge of attempted sodomy was that he had no intention of committing such act and he was merely exposing himself to the five-year-old girl when the witness came upon them. Conceivably, the jury could have found the defendant guilty of a lesser crime if it believed this was all he had in mind when he inveigled the unsuspecting child into leaving the playground and accompanying him to the hotel. Counsel's opening statement and the elicitation of testimony regarding the defendant's criminal history, the State argues, were consistent with the defense Michael Smith was striving to establish. If the remarks concerning his past and the eduction of evidence of his prior convictions constituted error on the part of counsel, the State maintains, the jury was admonished by the trial court to disregard the offending remarks, the inadmissible evidence adduced by counsel was stricken, and proper cautionary instructions were given. We are also reminded that counsel's judgment ought not be subjected to judicial hindsight.

True, matters presumably within the judgment of counsel, like trial strategy, "will rarely be second-guessed by judicial hindsight. *State v. McNulty,* 60 Haw. 259, 270, 588 P.2d 438, 446 (1978)." *State v. El'Ayache,* 62 Haw. 646, 649, 618 P.2d 1142, 1144 (1980). Attorneys "require and are permitted broad latitude to make on-the-spot strategic choices in the course of trying a case," *id.* (citing *State v. Antone, supra*), and "[d]efense counsel's tactical decisions at trial normally will not be questioned by a reviewing court." *State v. Onishi,* 64 Haw. 62, 63, 636 P.2d 742, 743 (1981) (citations omitted). Moreover, some of counsel's questionable decisions arguably could be deemed consistent with what defendant hoped would extenuate his crime. Yet, to say the circumstances here were uncommon would be an understatement.

### B.

With his opening remarks counsel nullified all of the spadework done by previous counsel to keep certain evidence of dubious value out of the jury's earshot. Even the trial judge's admonition to the jury that prior convictions, incarceration, or lewd conduct should not be consid-

ered in determining guilt in this case failed to deter him from following the announced plan of "putting everything out on the table."[8] Though forewarned that this course of action was fraught with peril, he nonetheless urged the defendant to "[t]ell us about the past five years of your life . . ."[9] and adduced evidence of six prior burglary convictions and incarceration in the penitentiary as a consequence, as well as testimony about a "quirk" defendant had of exposing himself.

Where, as in this case, the success of the asserted defense hinged on defendant's credibility, we would be hard put to say instructions from the court probably had the desired curative effect, particularly when the damaging information of prior convictions and incarceration was conveyed to the jury by defense counsel and again by the defendant at the urging of counsel. *Cf. United States v. Carter,* 482 F.2d 738, 740 (D.C. Cir. 1973) ("Even when the prior criminal record is brought into the evidence in an appropriate manner, there is the well-nigh inescapable prejudice on the issue of guilt notwithstanding the trial court carefully instructs the jury as to the limited consideration it may accord the evidence."); *State v. Kahinu,* 53 Haw. 536, 549, 498 P.2d 635, 643 (1972), *cert. denied,* 409 U.S. 1126 (1973) (The "injection by prosecution witnesses of irrelevant references to prior arrests, convictions, or imprisonment may generate insurmountable prejudice to the cause of an accused."); *Gregory v. United States,* 369 F.2d 185, 189-90 (D.C. Cir. 1966), *cert. denied,* 396 U.S. 865 (1969) (Two references made by police officer, a prosecution witness in trial of defendant for murder and robbery, to the unrelated crime of defendant's assault on officer with a gun were prejudicial to defendant and the error was not cured by court's instruction that jury should disregard such references). We would have to say there were errors reflecting counsel's lack of skill or judgment and the errors substantially impaired a potentially meritorious defense. And there is more in the record to support the claim that counsel's performance at trial was not within the range of competence expected of Hawaii

---

[8]*See supra* note 5.

[9]The following were among the questions asked and statements made by counsel in the course of his direct examination of the defendant:

Michael, you've been in trouble with the law before, correct?

Well let's not "BS" with the jury, okay. What have you been in trouble for? Tell us about the past five years of your life and then (inaudible) . . . .

Just tell it from your heart cause we don't hide nothing from the jury.

lawyers in criminal cases.[10]

## C.

The State, however, points out it was the defendant, not the prosecution, who introduced the prejudicial evidence. We are, of course, mindful that "invited errors [generally] are not reversible [errors]." *State v. Caudill,* 706 P.2d 456, 460 (Idaho 1985). Were we to follow the general rule in a situation where counsel's demonstrated lack of skill or judgment has caused the introduction of highly prejudicial matter which otherwise would be inadmissible, however, we would in effect be depriving defendant of his constitutional right to a fair trial. *Cf. State v. Pastushin,* 58 Haw. 299, 302-03, 568 P.2d 504, 506 (1977).[11]

We realize too that criminal trials could be turned by astute defense lawyers "into reversible trials by simply eliciting constitutionally impermissible [testimony] on direct examination." *State v. Caudill,* 706 P.2d

---

[10]For example, during the cross-examination of the young victim the following colloquy occurred:

Q. (defense counsel)   How do you remember that the man said that? How do you remember that? You still remember?

A. (the victim)   I don't know.

Q. (defense counsel)   I give you—I gonna give you one candy, one Valentines lollipop if you can tell us if you do remember or not, no? . . . .

Thereafter, counsel sought permission to sit in the witness chair and continue his cross-examination while the victim sat in his lap. The transcript of the colloquy between court and counsel reads:

THE COURT:   What do you propose to do?

[defense counsel]:   I'm going to be sitting on the chair and she can sit on my lap so she can see the jurors, so the jurors can see her.

THE COURT:   What is this reference to candy or something?

[defense counsel]:   I have candy, you know, just to open things up a little bit more. It's up there . . . .

Though the foregoing exchange occurred out of the jury's presence and counsel's request obviously was not granted, the incident hardly speaks well of his skill and judgment.

[11]Our statement on this point was:

However, where inadmissible hearsay is so prejudicial as to deprive the defendant of his constitutional right to a fair trial, its admission will constitute ground for reversal, although defense counsel has failed to object, when the conduct of the prosecution in knowingly and deliberately injecting this prejudicial matter into the proceedings has combined with the demonstrated ineptitude of defense counsel to effect a serious infringement upon the defendant's due process right to a fair trial.

58 Haw. at 302-03, 568 P.2d at 506 (citation and footnotes omitted).

at 460. But we think Rule 13 of the rules of this court[12] stands as a disincentive for competent attorneys to do so, since defense counsel rendering ineffective assistance in a criminal case may be subject to corrective action thereunder. Inasmuch as this may include a suspension of the attorney's license to practice law pending the completion of a prescribed course or courses of remedial education and other sanctions, the ploy would not be worth the candle.

Concluding that the assistance rendered the defendant by trial counsel was ineffective, we vacate the judgment of conviction and remand the case for a new trial.

*Sandra E. Pechter* (*Roehrig, Roehrig & Wilson,* of counsel) for appellant.

*Charlene Y. Iboshi* (*Lincoln Ashida,* Law Intern, with her on the brief), Deputy Prosecuting Attorney, for appellee.

## APPENDIX

Rule 13, Rules of the Supreme Court of the State of Hawaii

PROCEEDINGS FOLLOWING FINAL ADJUDICATION OF INEFFECTIVE ASSISTANCE OF COUNSEL IN CRIMINAL CASES.

Whenever the conviction of a criminal defendant has been overturned and a new trial ordered because of a finding that the defendant had ineffective assistance of counsel in the proceedings against him or her, and the order has become final, either because it was not appealed, or because it has been finally affirmed on appeal, it shall be the duty of the prosecutor and the counsel for the individual defendant each within five days of the finality of such order to file a certificate in the title of the cause with the Supreme Court of Hawaii noting that such an order has been entered and attaching a copy of that order to the certificate.

Within five days of the first receipt of such certificate by the supreme court, the chief justice shall appoint a special master to determine whether action against the counsel alleged to have been incompetent is warranted.

Within five days from his appointment, the special master shall mail a notice of his appointment together with a copy of the order of his appointment, the certificate or certificates, and the order reversing the conviction to the respondent attorney at his last known address as shown in the records of the clerk of the Supreme Court of Hawaii.

Within 45 days from mailing, the respondent attorney shall file with the clerk of the supreme court an answer showing cause why corrective action as provided herein should

---

[12]The rule is set forth in the appendix to the opinion.

 

not be taken by the supreme court. If the respondent attorney wishes to disqualify the special master, he shall file with his return a motion therefore supported by an affidavit made upon personal knowledge and showing facts sufficient to establish the personal bias and prejudice of the special master toward him.

If a motion for disqualification is filed, the master shall rule on the same within five days from the date of filing. That ruling shall be appealable only after an order in the proceedings as hereinbelow set forth has been entered.

The master shall within five days after receipt of the answer of the respondent appoint an attorney to further prosecute the proceedings and shall give notice of the appointment to the respondent attorney in the same manner as provided above.

The respondent attorney may represent himself or may designate an attorney to represent him. The respondent or his attorney and the attorney appointed by the master shall have 45 days from the appointment of the attorney by the master to conduct any discovery proceedings in accordance with the discovery chapter of the Hawaii Rules of Civil Procedure. On the expiration of the 45 days, the master shall set the matter for hearing within 30 days, take such evidence in accordance with the Hawaii Rules of Evidence as may be proffered by the parties, and within 10 days of the conclusion of the hearing, render a decision and an order either dismissing the proceedings or recommending corrective action against the respondent attorney.

Corrective action which may be recommended by the master and/or adjudicated by the supreme court may consist of any one or more of the following:

(1) Requiring the respondent attorney to take a prescribed course or courses of remedial education and to produce satisfactory evidence of his or her passing such courses;

(2) Suspending the respondent's license to practice law until (1) has been complied with.

(3) In cases where the master finds that ineffective assistance of counsel may have resulted from a violation of DR 6-101 or DR 7-101, the master shall, in addition to (1) and (2), refer the matter to the Office of Disciplinary Counsel for investigation under Rule 2 of these rules. In the event of a reference under this subparagraph, the master's finding and the reference shall be deemed confidential and shall not be disclosed except pursuant to the provisions of Rule 2.22 of these rules.

Within 20 days from the rendering of the master's decision and proposed order, respondent or his attorney and the attorney appointed by the master to prosecute the proceedings may file exceptions with the Supreme Court of Hawaii supported by a memorandum in support thereof.

Within 40 days of the rendering of the decision and proposed order by the master, the supreme court shall enter an order either dismissing the proceedings or ordering corrective action in accordance with the guidelines set forth above.