### 33157. GARCIA v. THE STATE.
### 33265. COUCH v. THE STATE.

UNDERCOFLER, Presiding Justice.

Robert Lewis Garcia (Case No. 33157) and Anthony Gregory Couch (Case No. 33265) were convicted of William Collier's murder and given life sentences at a joint trial. They appeal separately, but we combine their appeals into one opinion, for several enumerations of error are common to both cases. We affirm both judgments of the trial court.

A. Common Enumerations

1. Both Garcia and Couch raise the general grounds in their enumerations of error.

The state presented evidence to show that the victim was found dead lying nude across a bed in his apartment Saturday morning, January 8, 1977. There were three superficial stab wounds in his back and another on the right side of the face, where two cut wounds were also located. The apparent cause of death, however, was two blunt force wounds to the back of the head. A knife with a

broken tip and a bloody ashtray lay nearby on the floor.

Henry Geister admitted that Couch had brought him several items, including an ornamental clock and a Sony stereo, about three or four o'clock that morning. Garcia had waited for Couch in the hall and Couch had told Geister not to sell the property because the items were "hot." Geister admitted that he had been arrested for Collier's murder, but had made a statement and was to receive probation on a charge of receiving stolen property in exchange for his testimony. He also admitted he had been using drugs the Friday evening and Saturday morning in question. A later witness, Thomas, stated that he was at Geister's apartment at noon on Saturday when Couch alone came to "fence" a stereo and some clothes. The clock was identified as having belonged to the victim, by his mother.

Melzen Philips, a friend of the defendants, also testified for the state in exchange for probation on an unrelated burglary charge. He said that Garcia had arrived at his apartment about daybreak Saturday morning, hysterical and covered with blood. Garcia related that he had had a fight with a dude, a misunderstanding with a "faggot" he had met at the Krispy Kreme, and had probably killed him. Philips also stated that Couch had arrived about a half hour later, and was agitated, but not hysterical or covered with blood, and that Couch tried to calm Garcia; then Couch changed coats and left. Philips claimed that Couch changed coats because he was with Garcia when he made the attack and did not want to be identified, and that he overheard Couch saying that "Him and Bob [Garcia] committed—jumped on the dude . . . That he took the stuff. Him and Bob hit somebody. Someone. I don't know what they hit." This witness later testified that he did not get the impression that Couch had been at the apartment to start with, but that he had gone back later to steal some things.

John Paul Thomas, Philips' apartment mate, stated that he had waived extradition to New Jersey but also had five forgery charges pending in Georgia that were to be suspended if he testified, that he had come home after Garcia arrived, but before Couch came in, and that Couch had appeared agitated and had on a watch later identified

as having belonged to the victim. At this point the state rested.

Garcia then took the stand in his own defense. He claimed to have met the victim at the Krispy Kreme on Ponce de Leon at about 1:30 Saturday morning and had offered to point out a lively bar to the victim in exchange for a ride home. The victim said he wanted to stop by his apartment to clean up and that Garcia had gone in with him to use the bathroom. When he came out, he encountered the victim, who had no clothes on and who demanded that Garcia engage in oral sex. When Garcia refused, the fight ensued which led to to the death of the victim. Garcia grabbed a knife on the bedside table and used that until it broke, then threw it down and picked up the ashtray. When the victim stopped struggling, he ran from the apartment, taking the keys on the way out, and drove to Thomas' apartment. These keys were found in Couch's pocket, along with the victim's watch and watchband that Saturday evening when he was arrested on another case by the DeKalb police.

Garcia's defense was clearly justification and the jury was so charged. It was also charged on involuntary manslaughter. Couch put up no defense and did not cross examine Garcia, but made several motions for directed verdict, which were denied. The jury was authorized on the evidence detailed above to find both Garcia and Couch guilty of murder. There is sufficient evidence connecting Couch with the crime and placing Couch at the scene where Garcia admitted killing the victim to support the jury's verdict. *Ridley v. State,* 236 Ga. 147 (223 SE2d 131) (1976). The defendants' Enumerations 1, 2 and 3 are thus without merit.

2. The denial of their motion for mistrial is Garcia's fifth enumeration of error and Couch's third. It is predicated on an incident which occurred the morning of the second day of trial. The defense attorney and his partner were riding in the courthouse elevator with several other persons. Among them were Mr. John Lantini of the State Crime Lab (one of the state's witnesses), a policeman, and two of the jurors sitting on this case. Apparently in answer to the policeman's question, Lantini was heard to say, "I am over here to

convict two junkies who killed William Collier."

The defense questioned Lantini in support of its motion for mistrial, and he admitted making this statement to a policeman friend, but did not recollect who else was on the elevator. The burden then shifted to the state to overcome the presumption of harm. *Battle v. State,* 234 Ga. 637 (217 SE2d 255) (1975); *Shaw v. State,* 83 Ga. 92 (9 SE 768) (1889).

The state requested the court to ask questions of the jury in order to determine whether any of the jurors had overheard the comment, without informing them of the contents of the statement. The court asked the jurors if any of them had seen Mr. Lantini (who was standing before them) that morning, or if anyone had heard any statement by Mr. Lantini. It further instructed the jurors that they were the sole triers of fact, which decision was to be made only on the evidence produced during the trial. The court then asked the jury if any of its members had overheard any mention of the case from any source whatever including any casual comments. No juror responded to any of these questions and the trial court denied the motion for mistrial.

We find that since no jurors heard the statement made by Lantini, that the presumption of harm was rebutted by the state. We find no merit in the defendant's contention that the jurors uncontrovertibly heard the statement and that, although they did not now recall it, later testimony might cause the recollection of the statement, which would then prejudice the defense. Such speculation we find too remote to be prejudicial. The trial court properly refused to grant a mistrial. See *Battle v. State,* supra.

3. Garcia's sixth enumeration of error and Couch's fourth set out three instances in which they claim the district attorney made statements to the jury in her closing argument which were not supported by the evidence and were prejudicial to him. After each statement an objection was made which the court overruled.

Two of the arguments complained of inferred that Couch had gone back to the apartment after Garcia told him the location to steal the items later found on or fenced

by Couch, and that Couch was getting rid of the victim's car in the thirty minute interval between Garcia's and Couch's arrivals at Thomas' apartment. These statements were objected to by Garcia's attorney, but not by Couch's. The court overruled the motion and stated that the jury would recall the evidence presented. In both of these instances, the district attorney was attempting to complete the story presented by the evidence by pointing out to the jury the reasonable inferences which could be drawn therefrom. Such argument is permissible. *Fears v. State,* 236 Ga. 660 (225 SE2d 4) (1976); *Allen v. State,* 235 Ga. 709 (221 SE2d 405) (1975); *Shy v. State,* 234 Ga. 816 (218 SE2d 599) (1975).

The third statement is not very clear, but it appears that the district attorney was attempting to say, as the evidence showed, that Philips had testified that he had overheard Couch admit that Couch and Garcia had "jumped on a dude." She said, however, ". . . so they [the defendants] go over there and tell Mr. Philips and Philips co-operated, you recall, *as you heard from Mr. Couch* say when I arrived, he, Bob says he jumped on a dude. Now, its up to you to conclude whether he jumped on this particular dude that Bob Garcia killed." (Emphasis supplied.) Couch's attorney objected to this statement on the ground that Couch did not testify.

Although the statement could have been more artfully phrased, we find, with the instruction of the court in response to Couch's objection that the jury was not to consider the argument of counsel as evidence, that no prejudice resulted to either defendant. It was obvious that Couch did not testify.

### B. Garcia's Enumerations

4. The fourth enumeration of error urged by Garcia challenges the propriety of the admission of the clock, watch and watchband into evidence. He claims that there was no evidence that these items were taken illegally. The clock, identified by his mother as belonging to the victim, was found in Henry Geister's apartment. Geister testified that the clock among other items, had been brought by the defendants to his apartment at 3 or 4 a.m. on the Saturday morning that the victim was killed. The watch and watchband were found in Couch's pocket when he was

arrested later that same day by the DeKalb police. We find it relevant that these items, identified as belonging to the victim, were in the possession of the defendants on the day of the murder. Therefore, they were properly admitted into evidence and the trial court committed no error in this regard. *Patterson v. State,* 233 Ga. 724 (213 SE2d 612) (1975).

## C. Couch's Enumerations

5. In Couch's second enumeration of error, he cites the trial court for restricting his cross examination of John Thomas, a state's witness. The district attorney had already elicited from Thomas that he had used speed and preludin that Friday night and Saturday morning. The defense then attempted to go into questions regarding the witness' general abuse of drugs, but was stopped when the trial court sustained the state's objection to this line of questioning.

The trial court did not abuse its discretion in limiting the cross examination of this witness to his use of drugs on the days involved in the case. Couch has alleged no harm in being denied the right to continue this line of cross examination other than general impeachment of his credibility in this regard. We find any further evidence would have been cumulative and find no error. *Davis v. State,* 230 Ga. 902 (199 SE2d 779) (1973).

6. Couch's final enumeration of error raises the question whether the trial court erred in setting the order of closing arguments. Garcia offered evidence at trial in defense while Couch did not. Further, Garcia was not cross examined by Couch. Couch therefore contends he should have had the right to close. "The law is that if one defendant offers evidence, the right to closing argument is lost to all defendants, whether all of them offer evidence or not. [Cits.]" *Calhoun v. State,* 135 Ga. App. 609, 611 (218 SE2d 316) (1975). Accord, *Gilson v. Mitchell,* 131 Ga. App. 321 (205 SE2d 421) (1974).

*Judgments affirmed. All the Justices concur.*

33157 SUBMITTED JANUARY 13, 1978; 33265 SUBMITTED
FEBRUARY 3, 1978 — DECIDED FEBRUARY 22, 1978.

*Robert C. Ray,* for Garcia.

*Billy L. Spruell,* for Couch.

*Lewis R. Slaton, District Attorney, Donald J. Stein, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Daryl A. Robinson, Staff Assistant Attorneys General,* for appellee.