STATE OF HAWAII, Plaintiff-Appellee, *v.* JULES YOSHIMITSU SUGIMOTO, Defendant-Appellant, and ASHLEY ALEXANDER ANCHETA and RODNEY KAWEHIKULANI KAHAO, Defendants

NO. 7187

JULY 11, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM, JJ., AND RETIRED JUSTICE MARUMOTO ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY OGATA, J.

Jules Sugimoto, hereinafter defendant-appellant, has appealed from convictions of robbery, burglary, and rape. For the reasons set out below, we affirm the judgment of the trial court.

In June 1977, Rebecca Chang, Mary Wong, James Tam, and Irene Freitas were robbed at gunpoint at the home of the first three persons. Personal property and cash were taken from all of the victims. James Tam was directed to write a check for cash in the amount of one thousand dollars. After two of the assailants left the house, Mrs. Freitas, while blindfolded, was raped by the remaining intruder.

On October 5, 1977, the defendant-appellant, Ashley Ancheta, and Rodney Kahao were indicted on four counts of robbery in the first degree and one count of burglary in the first degree. Also, the defendant-appellant was charged with rape in the first degree. Ashley Ancheta pleaded guilty to three counts of robbery. All the charges against Rodney Kahao were dismissed pursuant to an immunity agreement

between him and the state. Kahao later testified as a prosecution witness against the defendant-appellant.

On September 14, 1978, the defendant-appellant was found guilty by a jury of three counts of robbery in the first degree, one count of robbery in the second degree, one count of burglary in the first degree, and one count of rape in the first degree. The instant appeal followed. The defendant-appellant presents the following contentions:

I. The trial court improperly allowed two unlisted witnesses to testify for the state.

II. The trial court erred by granting immunity to one of the prosecution witnesses.

III. The defendant-appellant's cross-examination of a prosecution witness was improperly limited by the trial court.

IV. The trial court erred when it allowed certain statements made by the defendant-appellant without the benefit of *Miranda* warnings into evidence.

VI. Demonstrative evidence for which a complete chain of custody had not been established should not have been admitted by the trial court.

VIII. The trial court erred when it instructed the jury.

I.

The defendant-appellant alleges that the trial court erred by allowing his co-defendants, Rodney Kahao and Ashley Ancheta, to testify as witnesses for the prosecution. Counsel for the defendant-appellant was not formally notified that the State would call Kahao and Ancheta until the morning of the trial. Defense counsel argued that the failure to list Kahao and Ancheta as prosecution witnesses violated Rule 16, Hawaii Rules of Penal Procedure, and moved for a mistrial. The trial court denied the motion and allowed the trial to continue.

Rule 16, Hawaii Rules of Penal Procedure, states in pertinent part:

(b) Disclosure by the Prosecution.

(1) *Disclosure Upon Written Request of Matters Within Prosecution's Possession*. Upon written request of

defense counsel, the prosecutor shall disclose to him the following material and information within the prosecutor's possession or control:

> (i) the names and last known addresses of persons whom the prosecutor intends to call as witnesses. . . .

The prosecuting attorney did fail to notify the defense attorney that the co-defendants would testify in violation of this rule. However, violation of Rule 16 does not warrant an immediate declaration of a mistrial by the trial court. The rule provides that where a party fails to comply with its terms "the court may order such party to permit the discovery, grant a continuance, *or it may enter such other order as it deems just under the circumstances.*" Rule 16(e)(8)(i), HRPP (emphasis added).

We hold that the trial court did not err in its approach to the problem of the unlisted prosecution witnesses. The trial judge fully inquired into the circumstances surrounding the calling of Kahao and Ancheta. *See Smith v. State,* 319 So.2d 14, 17 (Fla. 1975); *Bradford v. State,* 278 So.2d 624, 625 (Fla. 1973). The court also made very effort to allow the defense attorney to interview the unlisted witnesses.[1] In this way the court below insured that the defendant-appellant was not surprised or prejudiced by the testimony of the two witnesses. *See Gibson v. State,* 252 Ark. 988, 992-93, 482 S.W.2d 98, 101 (1972); *People v. Heller,* 131 Ill. App.2d 799, 804, 267 N.E.2d 685, 689-90 (1971); *Lund v. State,* 345 N.E.2d 826, 829 (Ind. 1976); *State v. Sevcik,* 239 N.W.2d 571, 573 (Iowa 1976); *Irby v. State,* 60 Wisc.2d 311, 321, 210 N.W.2d 755, 761 (1973). The Court below acted properly in accordance with Rule 16, HRPP.

II.

Contrary to defendant-appellant's assertion, the court below did not err by granting immunity to Rodney Kahao so

---

[1] Counsel for the defendant-appellant interviewed Rodney Kahao over the weekend before he testified. The court below changed the order of the remaining witnesses so that defense counsel could interview Ashley Ancheta.

that he would testify against the defendant-appellant. The witness immunity statute in effect at the time of the trial stated in relevant part:

> The direction to the witness to testify or produce other information shall be issued by the court upon application therefor by the state. The application may be made whenever, in the judgment of the state, the witness has asserted or is likely to assert his privilege against self-incrimination and his testimony or other information is or will be necessary to the public interest.

HRS § 621C-2 (1971). The requirements of the statute were satisfied in this case. It is clear from the record that the trial judge determined that Kahao was likely to assert his privilege against self-incrimination if he was called as a prosecution witness and that Kahao's testimony was necessary to the public interest. Immunity therefore properly was granted to Rodney Kahao.

### III.

The defendant-appellant contends that the court below erred in restricting his attempts to cross-examine Rodney Kahao for impeachment purposes. Counsel for the defendant-appellant sought to question Kahao about his involvement with the use and sale of marijuana and about his prior criminal record.

The defendant-appellant attempted to impeach Kahao's credibility by cross-examining him about his general use of marijuana and possible involvement in the sale of marijuana. A witness may not be questioned as to his involvement with drugs solely to show that he is unreliable or lacks veracity. *Morrell v. State*, 575 P.2d 1200, 1204 (Alas. 1978); *Fields v. State*, 487 P.2d 831, 844 (Alas. 1971); *People v. Buono*, 191 Cal.App.2d 203, 233, 12 Cal.Rptr. 604, 621 (1961); *People v. Steele*, 193 Colo. 87, 94, 563 P.2d 6, 11 (1977); *Garcia v. State*, 240 Ga. 796, 801, 242 S.E.2d 588, 592 (1978); *State v. Belote*, 213 Kan. 291, 295-96, 516 P.2d 159, 163 (1973); *State v. Dault*, 19 Wash.App. 709, 719, 578 P.2d 43, 49 (1978); *see generally* McCormick's Handbook of the Law of Evidence § 45, at 94-95

(2d ed. 1972). The trial court did not abuse its discretion in restricting the defendant-appellant's cross-examination of Kahao. *Kekua v. Kaiser Foundation Hospital*, 61 Haw. 208, 221, 601 P.2d 364, 373 (1979); *People v. Steele, supra; Garcia v. State, supra; State v. Belote, supra.*

Counsel for the defendant-appellant also attempted to impeach Kahao by showing that he had made a deferred acceptance of guilty (DAG) plea in a prior criminal case. While a prior conviction which is relevant to the witness's truth and veracity may be used for impeachment purposes, *Asato v. Furtado*, 52 Haw. 284, 293, 474 P.2d 288, 295 (1970), a DAG plea is not a conviction and may not be so used. HRS § 853-1(d) (1976).[2] The court below acted correctly in preventing the cross-examination of Kahao as to his prior DAG plea.

IV.

The defendant-appellant asserts that the trial court erred in admitting his June 4 statement to the police detective into evidence because the detective did not inform him of his rights to remain silent and to have an attorney present. Defendant-appellant maintains that when questioning of a person occurs at a police station, *Miranda v. Arizona*, 384 U.S. 436 (1966) requires that these procedural safeguards be provided to him.[3] We disagree.

The requirements delineated in *Miranda, supra* at 467-73, apply only when custodial interrogation takes place. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or

---

[2] The statute states that "[d]ischarge of the defendant and dismissal of the charge against him under this section shall be without adjudication of guilt, shall eliminate any civil admission of guilt, and *is not a conviction*." (Emphasis added.)

[3] The Supreme Court summarized the required procedures as follows:

Prior to any questioning, the person must be warned that he has a *right to* remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Miranda, supra* at 444.

otherwise deprived of his freedom of action in any significant way." *Id.* at 444; *State v. Reese,* 61 Haw. 499, 500, 605 P.2d 935, 936 (1980). To determine whether custodial interrogation occurred and *Miranda* warnings were required, we must objectively examine the totality of circumstances at the time of the questioning. *State v. Patterson,* 59 Haw. 357, 361, 581 P.2d 752, 755 (1978). Factors for our consideration include the time and place of the interrogation, the length of the interrogation, the questions asked, the behavior of the police officer, and any other pertinent circumstances.

The defendant-appellant contends that because the questioning took place at the police station, *Miranda* warnings should have been given to him even though at the time of the interrogation he was not a suspect in the investigation. We hold that the fact that the questioning occurred in the police station is but one factor, albeit an important one, in deciding whether the defendant-appellant was in custody when he was questioned. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977); *State v. Patterson, supra* at 360, 581 P.2d at 754.

In the instant case, the defendant-appellant came to the police station voluntarily at the request of the police detective. At that time, defendant-appellant was not a suspect. The detective was trying to locate another suspect through the defendant.[4] The tone of the questioning was not coercive and the detective did not make any threats. The defendant-appellant was free to leave the station after the interview. He was not arrested until two days after the questioning. Under these circumstances, we find that the defendant-appellant was not in custody and therefore no *Miranda* warnings needed to be given.

V.

Defendant-appellant contends that the court below improperly admitted hearsay evidence against him during the

---

[4] In fact, the detective requested the defendant-appellant to look through the police mug photographs in the hope that he could identify the unknown suspect.

trial. Detective Benson testified that Velma Yokoyama, the defendant's aunt, admitted that she lied to him on the defendant's behalf during their first interview. Counsel for the defendant-appellant objected to this testimony as hearsay.

Hearsay is an out of court statement offered to show the truth of the matter asserted. *Kekua v. Kaiser Foundation Hospital*, 61 Haw. 208, 217, 601 P.2d 364, 370 (1979); *State v. Murphy*, 59 Haw. 1, 16, 575 P.2d 448, 458-59 (1978); McCormick, *supra* at § 246. Detective Benson's testimony regarding Ms. Yokoyama's falsehood was not hearsay because it was not being offered to show that Ms. Yokoyama actually lied. Ms. Yokoyama had already testified that she initially told Detective Benson a false story. Detective Benson's testimony was properly admitted to explain his delay in arresting the defendant-appellant. *See United States v. Zamarripa*, 544 F.2d 978, 982 (8th Cir. 1976); *Territory v. Williams*, 41 Haw. 348, 351 (1956); *Kainea v. Kreuger*, 31 Haw. 108, 113 (1929); McCormick, *supra* at § 249; 4 Weinstein's Evidence 801(c)[01], at 801-70 (1978).

## VI.

The defendant-appellant argues that the trial court erred by admitting into evidence a check for which a complete chain of custody had not been established. A trial court has broad discretion in deciding whether to admit demonstrative evidence where the object possesses unique and readily identifiable characteristics and the substance composing the item is relatively impervious to change. McCormick, § 212 at 527; *see State v. Olivera*, 57 Haw. 339, 344, 555 P.2d 1199, 1202 (1976). The check in the instant case met the above requirements. Further, three witnesses positively identified the check. The trial court did not abuse its discretion by allowing the check into evidence.

## VII.

The defendant-appellant sets out three instances of alleged prosecutorial misconduct which interfered with his

right to a fair trial. First, he argues that the prosecutor misled his counsel as to the witnesses the State planned to call. Although the prosecutor did fail to notify the defendant-appellant that the co-defendants would testify, we find no deliberate attempt to deceive the defense attorney. *See* section I of the opinion for a more extensive discussion of this issue. Second, the defendant-appellant contends that the prosecutor improperly stated facts not in evidence. We find no misstatement. Third, the prosecutor stated in the presence of the jury that the court was withholding evidence. Although this was an inappropriate comment, it did not prejudice the defendant-appellant so as to deny him a fair trial. *See State v. Kahalewai*, 55 Haw. 127, 129, 516 P.2d 336, 338 (1973).

## VIII.

The defendant-appellant contends that the trial court erred in refusing to instruct the jury on the offense of receiving stolen property in addition to its instruction on first degree robbery.[5] A court may instruct on an offense not specifically charged in the indictment when it is a lesser included offense of the original charge. *State v. Stone*, 571 S.W.2d 486, 487

---

[5] The applicable statutes in 1977 are set out here. They are identical to the statutes presently in effect.

§ 708-830 *Theft*. A person commits theft if he does any of the following:

\* \* \* \* \*

(8) Receiving stolen property. He intentionally receives, retains, or disposes of the property of another, knowing that it has been stolen, with intent to deprive the owner of the property. It is prima facie evidence that a person knows the property to have been stolen if, being a dealer in property of the sort received, he acquires the property for a consideration which he knows is far below its reasonable value.

\* \* \* \* \*

§ 708-840 *Robbery in the first degree*. (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

(a) He attempts to kill another, or intentionally inflicts or attempts to inflict serious bodily injury upon another; or

(b) He is armed with a dangerous instrument and:

(i) He uses force against the person of the owner or any person present

(Mo.App. 1978). Because receiving stolen property is not a lesser included offense within robbery in the first degree,[6] the trial court acted correctly in refusing to instruct the jury on that crime.

Affirmed.

*Richard Turbin* for defendant-appellant.

*Wesley T. Kan*, Deputy Prosecuting Attorney, for plaintiff-appellee.

---

with intent to overcome the owner's physical resistance or physical power of resistance; or

(ii) He threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

(2) As used in this section, "dangerous instrument" means any firearm, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury.

(3) Robbery in the first degree is a class A felony.

[6] Theft by the receipt of stolen goods requires knowledge that such goods have been stolen. This is not an element of the offense of robbery. *See* note 5, *supra*.