922 P.2d 994

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Todd K. KAPELA, Defendant–Appellant.**

**No. 16863.**

Intermediate Court of Appeals of Hawai'i.

July 2, 1996.

Alexandra P. Scanlan and Todd A. Watanabe, Deputy Public Defenders, on the opening and reply briefs, respectively, Honolulu, for defendant-appellant.

James H. S. Choi, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before WATANABE, ACOBA and KIRIMITSU, JJ.

WATANABE, Judge.

Defendant–Appellant Todd K. Kapela (Defendant) appeals from the January 29, 1993 judgment of the Family Court of the First Circuit, convicting him of refusal to comply with the lawful order of a police officer, specifically a police warning citation ordering him to leave his home and not return for a

specified "cooling-off" period, a violation of Hawai'i Revised Statutes (HRS) § 709–906(1) and (4) (Supp.1992).

Defendant asserts that (1) the family court improperly admitted hearsay evidence at trial; (2) the admission of the hearsay evidence violated his constitutional right to confront the witnesses against him; (3) there was insufficient evidence to find Defendant guilty beyond a reasonable doubt of the charge against him; and (4) HRS § 709–906(4) is unconstitutionally vague and overbroad.

Although we disagree with Defendant's contentions, we remand this case for a determination of whether Defendant was advised orally or in writing of his statutory right to return to his home with a police escort to remove his personal effects, and for further proceedings consistent with this opinion.

## BACKGROUND

At about 10:55 on the morning of Friday, January 22, 1993, Honolulu police officers Elizabeth Walsh (Officer Walsh) and Eric Zarriello (Officer Zarriello) were dispatched to a Kaunaoa Street address to investigate a reported assault at Bonnie Hedburg's (Complainant) and Defendant's home (the home).

At Defendant's January 29, 1993 jury-waived trial, Officers Walsh and Zarriello testified that when they arrived at the home, Defendant had already left and Complainant "appeared shaken," was "crying a lot," was "very distraught," and told the officers that "she had been assaulted by her boyfriend," with whom she had been living for approximately one year. Complainant told the officers that Defendant "had hit her in the head with a walkman [radio] as he was leaving," and she bowed over to show the officers "[t]wo small abrasions . . . on the crown of her head . . . and . . . a small cut." Complainant also related that "she was afraid [Defendant] would harm her" or "might have her killed," that she was "afraid of [Defendant's] recourse" because "for fifty dollars [Defendant] could have her killed," and that

"she [knew] of other family members that that ha[d] happened to."

According to Officer Walsh, Complainant declined any medical attention for her injuries. Complainant also refused to seek a temporary restraining order against Defendant, claiming "that would just add to the problems that might . . . come from her having reported [the assault] in the" first place.

The officers were unable to take any action against Defendant because Defendant was not at home. However, at about 8:25 the next morning, Saturday, January 23, 1992, Officer Zarriello and Officer Patrick Welsh (Officer Welsh) drove by the home and saw Defendant's car parked out front. They therefore decided to check if Defendant was inside. Officer Zarriello testified that upon entering the home, the officers found Defendant asleep on a bed in the bedroom and Complainant "sleeping in the living room on the couch." After waking Defendant, the officers placed Defendant under arrest for abuse of a family or household member, in violation of HRS § 709–906(1).[1]

While Defendant was being arrested, Complainant, who had remained on the couch lying under the covers, told the officers that she "didn't call the police; that she didn't want to prosecute." As soon as Defendant was taken outside the home, Complainant got up from the couch and, according to Officer Zarriello, "started crying," and "said she's afraid of him; that she's afraid he's gonna kill her or somebody's gonna have her—he's gonna have someone kill her."

Defendant was thereafter taken to the Honolulu police station, where he was issued a warning citation by Officer Zarriello at 9:15 a.m. The warning citation ordered Defendant to leave the home

AND TO STAY AWAY FOR A PERIOD OF TWENTY–FOUR (24) HOURS beginning at 01–23–93/9:15 am and ending at 01–25/93/4:30 pm. When the incident occurs after 4:30 p.m. on any Friday, or on any Saturday . . . the order to leave the premises shall commence immediately, but

---

1. Hawai'i Revised Statutes (HRS) § 709–906(1) (Supp.1992) provides, in relevant part, that "[i]t shall be unlawful for any person, singly or in concert, to physically abuse a family or house-hold member[.]" The record does not indicate whether Defendant–Appellant Todd K. Kapela (Defendant) was ever prosecuted for this charge.

the 24–hour period shall be enlarged and extended until 4:30 pm. on the first day following the weekend[.]

The citation also informed Defendant that

[f]ailure to abide by this order shall result in your arrest under Section 709–906, HRS, and possible conviction of a misdemeanor. A person convicted under this section shall serve a minimum jail sentence of forty-eight (48) hours and shall be required to undergo any available domestic violence treatment and counseling program, as ordered by the court. The maximum penalty is a fine of $1,000.00 and/or up to one year in jail.

Officer Zarriello testified that he read and explained the warning citation to Defendant, who signed the citation after indicating that he understood its contents. The officer also stated that Defendant was cooperative, had no visible injuries, and appeared sober at the time he signed the citation. Defendant then gave the officer a statement of his version of the events of the previous day. In the statement, Defendant denied having abused Complainant but admitted that he had been arguing with Complainant about the walkman radio (walkman), had tossed the walkman over his shoulder, and had hit Complainant with the walkman by accident. Officer Zarriello then gave Defendant a copy of the signed warning citation, and Defendant left the police station.

About an hour later, at 11:15 a.m., Officer Welsh received a radio call from police dispatch, reporting that Defendant had returned to his home. Officer Welsh immediately proceeded to the home and found Defendant within the home. The officer asked Defendant if Officer Zarriello had given him a piece of paper at the police station. When Defendant produced a copy of the warning citation, Officer Welsh placed him under arrest for violating the warning citation, an offense proscribed by HRS § 709–906(1) and (4). Officer Welsh testified that Defendant was cooperative and stated that he had returned to the home only to get his clothing.

At the time Defendant was arrested, HRS § 709–906(1) and (4) provided, in relevant part, as follows:

(1) It shall be unlawful for any person ... *to refuse compliance with the lawful order of a police officer under subsection (4). . . .*

\* \* \*

(4) Any police officer, with or without a warrant, may take the following course of action *where the officer has reasonable grounds to believe that there was recent physical abuse or harm inflicted by one person upon a family or household member, whether or not such physical abuse or harm occurred in the officer's presence:*

(a) The police officer may make reasonable inquiry of the family or household member upon whom the officer believes recent physical abuse or harm has been inflicted and other witnesses as there may be;

(b) *Where the police officer has reasonable grounds to believe that there is probable danger of further physical abuse or harm being inflicted by one person upon a family or household member, the police officer may lawfully order the person to leave the premises for a cooling[-]off period of twenty-four hours;* provided that the person is allowed to enter the premises with police escort to collect any necessary personal effects;

(c) Where the police officer makes the finding referred to in [paragraph] (b) and the incident occurs after 4:30 p.m. on any Friday, or on any Saturday, Sunday or legal holiday, the order to leave the premises shall commence immediately and be in full force but the twenty-four hour period shall be enlarged and extended until 4:30 p.m. on the first day following the weekend or legal holiday;

(d) All persons who are ordered to leave as stated above shall be given a written warning citation stating the date, time, and location of the warning and stating the penalties for violating the warning. A copy of the warning citation shall be retained by the police officer and attached to a written report which shall be submitted in all cases. A third

copy of the warning citation shall be given to the abused person; and

(e) *If the person so ordered refuses to comply* with the order to leave the premises *or returns to the premises before the expiration of the cooling[-]off period, the person shall be placed under arrest for the purpose of preventing further physical abuse or harm to the family or household member.*

(Emphases added.)

Defendant was subsequently convicted as charged, and this timely appeal followed.

## DISCUSSION

### I. *Admissibility of Complainant's Statements*

Defendant first contends that the trial court erred in allowing the police officers to testify as to Complainant's out-of-court statements because the statements (1) were hearsay and not subject to any exception to the hearsay exclusionary rule; and (2) violated his constitutional right to confront the witnesses against him, as provided in article I, section 14 of the Hawai'i Constitution.[2] We disagree.

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hawai'i Rules of Evidence (HRE) Rule 801(3) (1993). In this case, the trial court ruled that Complainant's out-of-court statements were not hearsay because they were offered by the State not for their truth, but to show that the police officers had reasonable grounds to issue the warning citation which Defendant subsequently violated. Based on the case law in this jurisdiction, the trial court's ruling was not erroneous.

In *State v. Perez*, 64 Haw. 232, 233, 638 P.2d 335, 336 (1981), the trial court allowed a police officer to testify about a telephone call

he had received which identified the defendant as the rapist whom police were looking for. The supreme court held that the testimony about the telephone call was not hearsay because it was not offered for its truth but to show why police included the defendant's photograph in a photo lineup and "to prove that the police were credible in their investigation." *Id.* at 234, 638 P.2d at 337. *See also State v. Sugimoto*, 62 Haw. 259, 614 P.2d 386 (1980) (police officer's testimony that the defendant's aunt admitted lying to the officer about the defendant was not hearsay because it was offered not to prove that the aunt lied, but to explain the officer's delay in arresting the defendant); *State v. Mason*, 79 Hawai'i 175, 180, 900 P.2d 172, 177 (App.1995) (testimony of police officer that he had been told by police dispatch and bank that check was stolen was not hearsay because it went to police officer's subsequent conduct in arresting defendant).

Similarly in this case, the testimony of Officers Walsh and Zarriello that Complainant had told them that Defendant had hit her was not hearsay because it was offered not to prove the truth of the statement that Defendant had hit Complainant, but to establish the basis for the officers' subsequent actions in issuing Defendant a warning citation ordering him to leave the premises and to remain away for a specified time period.

Because Complainant's statements were not hearsay and the actual truth or falsity of the statements was irrelevant to Defendant's conviction for violating the warning citation under HRS § 709–906(1) and (4), Complainant's failure to testify at trial did not implicate Defendant's right to confront the witnesses against him.

### II. *Sufficiency of the Evidence*

Defendant next contends that there was insufficient evidence to find beyond a reasonable doubt that he was guilty of refusal to

**2.** Article I, section 14 of the Hawai'i Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against the accused." This "right of confrontation affords the accused ... the opportunity to challenge the credibility and veracity of the prosecu-

tion's witnesses[.]" *State v. Mason*, 79 Hawai'i 175, 180 n. 7, 900 P.2d 172, 177 n. 7 (App.1995) *cert. denied,* 79 Hawai'i 341, 902 P.2d 976 (1995) (quoting *State v. Ortiz*, 74 Haw. 343, 360, 845 P.2d 547, 555, *reconsideration denied,* 74 Haw. 650, 849 P.2d 81 (1993)).

comply with the lawful order of a police officer, in violation of HRS § 709–906(1) and (4). Specifically, Defendant argues that there was insufficient evidence that: (1) Defendant and Complainant were family or household members; (2) the police officers had reasonable grounds to believe that a "cooling-off" period was necessary; and (3) there was "recent" physical abuse or harm. We disagree.

■ In passing on the legal sufficiency of evidence to support a conviction, an appellate court must consider the "evidence adduced in the trial court ... in the strongest light for the prosecution[.]" *State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (quoting *State v. Batson,* 73 Haw. 236, 248–49, 831 P.2d 924, 931, *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992)). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." *Id.*

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

*Id.*

Defendant was charged with failure to comply with the lawful order of a police officer under HRS § 709–906(1) and (4). To sustain a conviction for this offense, the State was required to prove beyond a reasonable doubt the following four elements:

(1) that a police officer had reasonable grounds to believe that there was recent physical abuse or harm inflicted by Defendant upon Complainant, a family or household member;

(2) that the officer had reasonable grounds to believe that there was a probable danger of further physical abuse or harm being inflicted by Defendant upon Complainant;

(3) that the officer issued a written warning citation to Defendant, ordering

him to leave the home for a cooling-off period of twenty-four hours or a specified enlarged period if the incident occurred after 4:30 p.m. on any Friday, or on any Saturday, Sunday or legal holiday; and

(4) that Defendant returned to the home before the expiration of the cooling-off period.

Therefore, contrary to Defendant's assertions, it was not necessary for the State to prove beyond a reasonable doubt that Defendant and Complainant were family or household members or that Complainant sustained recent physical abuse or harm; it was only necessary for the State to prove that the police had reasonable grounds for believing that such facts existed. In addition, the State was required to prove that a warning citation ordering Defendant to leave the premises and not return for a specified cooling-off period was issued, and that Defendant either refused to leave the premises or returned to the premises within the cooling-off period. *State v. Laborde,* 71 Haw. 53, 781 P.2d 1041 (1989).

Defendant does not deny that he was issued a warning citation ordering him to leave the premises for a specified cooling-off period (Element 3) and that he returned to the premises before the cooling-off period set forth in the warning citation had expired (Element 4). Instead, he challenges the issuance of the warning citation on grounds that the evidence was not sufficient to show the existence of Elements 1 and 2. We therefore examine the record to determine if there was substantial evidence adduced to support the presence of these elements.

A. *Element 1—Reasonable Grounds for Belief of Recent Physical Abuse or Harm Inflicted on Family or Household Member*

Subsection (4) of HRS § 709–906 requires that before a police officer may issue a warning citation ordering an alleged abuser to leave the premises for a cooling-off period, the officer must have reasonable grounds to believe that "recent physical abuse or harm" was inflicted upon a family or household member.

Officers Walsh and Zarriello both testified that when they were dispatched to Defendant's and Complainant's home on January 22, 1993, Complainant was distraught, crying, and shaken, and claimed that she had been hit on the head with a walkman by Defendant, her boyfriend, with whom she had lived for about a year. The officers also testified that they observed abrasions and a cut on Complainant's head. There was thus substantial evidence in the record to support the trial court's conclusion that the police officers had reasonable grounds to believe that Complainant and Defendant were members of the same household and that Defendant had inflicted physical abuse or harm on Complainant.

Defendant contends, however, that since the alleged physical abuse or harm occurred on January 22, 1993, approximately twenty-one to twenty-two hours before the warning citation was issued on January 23, 1993, the abuse or harm was not "recent" and the warning citation was unlawfully issued. We disagree.

■ The statute does not define the word "recent." [3] According to HRS § 701–104 (1993), however, the principles of construction to be applied in interpreting provisions of the Hawai'i Penal Code are as follows:

The provisions of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of the words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.

Additionally, HRS § 1–14 (1993) provides that "[t]he words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning." HRS § 1–15 (1993) also directs that

[w]here the words of a law are ambiguous:

(1) The meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

(2) The reason and spirit of the law, and the cause which induced the legislature to enact it, may be considered to discover its true meaning.

(3) Every construction which leads to an absurdity shall be rejected.

The Hawai'i Supreme Court has also instructed that in construing a statute, "our foremost responsibility ... is to ascertain and give effect to the intention of the legislature[,] obtained primarily from the language contained in the statute itself." *State v. Mezurashi*, 77 Hawai'i 94, 97, 881 P.2d 1240, 1243 (1994) (internal quotation marks and citations omitted). Furthermore, "we must read the statutory language in the context of the entire statute and construe it in a man-

---

**3.** Our review of the domestic violence statutes in other jurisdictions did not reveal any legislative provisions similar to Hawai'i's requirement that there has been "recent" physical abuse to order the alleged abuser to leave the premises for a "cooling-off" period. *See* M. Griffaton *Mandatory Arrest Laws in Domestic Violence Cases*, Ohio Legislative Service Commission (1994) (reviewing domestic violence arrest laws in forty states and the District of Columbia). A number of states do require, however, that in order for police to arrest an alleged abuser, the alleged abusive incident giving rise to probable cause to arrest must have occurred within a fixed period of time prior to arrest or to the police officer's determination of probable cause. *See, e.g.,* N.D. Cent.Code § 14–07.1–11 (Supp.1995) (abuse must have occurred four hours prior to probable cause determination and police must observe a recent physical injury); Okla. Stat. Ann. tit. 22 § 40.3 (West Supp.1996) (abuse must have occurred four hours prior to arrest and police must have observed a recent physical injury); R.I. Gen. Laws § 12–29–3 (1994) (warrantless arrest must be made within twenty-four hours of alleged abuse); Wash. Rev.Code § 10.31.100(2)(b) (Supp.1995) (arrest must be made within four hours of probable cause determination whether injury is observable by police or not); Wis. Stat. Ann. § 968.075 (West Supp.1995) (arrest may be made twenty-eight days after alleged incident). Pennsylvania's prohibition on warrantless arrest in domestic violence cases unless the police observe recent physical injury "or other corroborative evidence" indicates that perhaps the requirement that abuse be "recent" goes to the facts which will support probable cause to arrest. 18 Pa. Stat. Ann. § 2711(a) (Purdon Supp.1995).

ner consistent with the purpose of the statute." *Id.*

Applying the foregoing principles, we note initially that the ordinary or popular meaning of the word "recent," as set forth in *Webster's Third New International Dictionary of the English Language* 1894 (1981), depends on the context in which the word is used; the meaning may vary greatly, from "having lately come into existence: just made or formed," to "of or relating to the present or existing epoch[.]" We turn next to the commentary and legislative history of HRS § 709–906 to determine if these sources shed any light on what the legislature intended to be the meaning of the word "recent" in the context of the statute and its purpose. The *Commentary* and *Supplementary Commentary* on HRS § 709–906, which according to HRS § 701–105 (1993), "may be used as an aid in understanding the provisions of this [Penal] Code," indicate that the statute has gone through a number of evolutionary changes since it was enacted into law in 1973.

As originally enacted, HRS § 709–906 made it "unlawful for any person, singly or in concert, to physically abuse his or her spouse, or to refuse compliance with the lawful order of a police officer ... to leave the premises for a cooling[-]off period of three hours," and gave a police officer "the power to arrest [only] if the offense [was] committed in his [or her] presence." 1973 Haw. Sess. L. Act 189, at 323. In those instances where the officer did not actually witness the commission of the offense but upon reasonable inquiry, had reasonable grounds to believe that (1) "there was recent, substantial, physical harm inflicted by one spouse upon the other," and (2) "there [was] probable danger of further ... harm being inflicted," the officer was authorized to order the abusive spouse to leave the premises for three hours. *Id.* In commenting on this procedure, the House Judiciary Committee stated, in part, as follows:

> Many times a call is made to the police for assistance but the police are unable to act. What is normally required in those instances is that a formal complaint be registered and then arrest will follow, oftentimes too late to prevent the beating.

> Also, the beaten spouse, usually the female, is hesitant to file a complaint for fear of reprisal at a later time, or the incarceration of the spouse would remove the breadwinner, leaving the family without support, often becoming dependents of the state.

> This bill is intended to alleviate this problem to a certain extent....

> Your Committee has amended the original form of the bill to set out a definite course of action for the police officer to follow *in those cases where recent, substantial, physical harm having been inflicted upon the spouse is readily apparent but has not been inflicted in his presence so as to permit an arrest. The bill as amended provides that the officer is to make reasonable inquiry as to whether further, substantial, physical harm is likely to occur. If he should ascertain that such likelihood exists, the police officer is empowered to require the other spouse to leave the premises for a cooling-off period of at least three hours.* A spouse's failure to comply with such reasonable request of the police officer is made a basis for such officer to take appropriate steps to arrest the troublesome spouse to prevent further substantial physical harm being inflicted upon the already injured and fearful spouse.

Hse. Stand. Comm. Rep. No. 657, in 1973 House Journal at 1064–65 (emphasis added).

By Act 266, 1980 Haw. Sess. L. at 508, the legislature amended HRS § 709–906 to authorize the police to make an arrest for spouse abuse "regardless of whether the physical abuse occurred in the officer's presence or not." *Supplemental Commentary.* The legislature also amended the statute to clarify that police, in addition to having the power to arrest, could apply non-arrest measures, including the three-hour cooling-off order, even when police actually witnessed the physical abuse. Hse. Conf. Comm. Rep. No. 29–80, in 1980 House Journal at 1085.

Act 248, 1983 Haw. Sess. L. at 525 added two changes "intended to encourage more immediate police action in spouse abuse cases: the removal of the requirement that 'substantial' physical harm to a spouse occur before police can act[,] and the granting of

civil immunity to police who act in good faith when arresting persons for spouse abuse." *Supplemental Commentary.*

In 1985, HRS § 709–906 was amended by Act 143, 1985 Haw. Sess. L. at 253 to

(1) require police to prepare a written report if there are reasonable grounds to believe that abuse exists; (2) increase the "cooling[-]off" period to twelve hours; (3) require the arrest of the abuser who refuses to leave the premises when ordered by police or who returns before the "cooling[-]off" period expires; (4) mandate a minimum 48–hour jail term and counseling and treatment of a convicted abuser; and (5) extend coverage of the law to protect family or household members from abuse.

*Supplemental Commentary.* The Senate Judiciary Committee noted that it had "shortened the cooling[-]off period during which an alleged abuser should be ordered to vacate the home from [the proposed amendment of] forty-eight (48) to twelve (12) hours" because

the forty-eight (48) hour period may create an unjustifiable financial hardship if the alleged abuser is forced to resort to renting a room to stay overnight; it may also create an unjustifiable practical hardship if the alleged abuser is prevented from picking up a change of clothes for that long period of time. The twelve (12) hour *[cooling-off] period should still allow an adequate time for the alleged abuser to "cool off" and control his or her behavior.*

Sen. Stand. Comm. Rep. No. 67, 1985 Senate Journal at 932 (emphasis added).

In 1986, HRS § 709–906 was amended to "[require] police to issue written citations to abusive persons ordered to leave the premises of a family or household for a cooling[-]off period." *Supplemental Commentary;* 1986 Haw. Sess. L. Act 244, at 427. The written citation requirement was intended to accomplish a number of purposes.

First, it informs the abusive person of the conditions of the cooling[-]off period. Second, the citation helps insure that the cooling[-]off period is observed. Third, responding police may use the citation as an efficient means of transmitting information ·to police on subsequent shifts who are resummoned to the same household where

the abuse occurred. Finally, the citation eases prosecution of the abusive person since it records the exact facts of the alleged abuse and provides proof that the defendant was notified of the conditions of the cooling[-]off period.

*Supplemental Commentary.*

Finally, in 1991, HRS § 709–906 was amended to lengthen, from twelve to twenty-four hours, the cooling-off period for which a police officer could lawfully order an abusive family or household member to leave the premises, and to allow the abusive member to enter the premises with a police escort to collect any necessary personal effects. The amendments also provided that the cooling-off period for incidents of alleged abuse occurring on a weekend or legal holiday could be extended to 4:30 p.m. on the first day following the weekend or legal holiday. The legislative purpose for these amendments was set forth in section 1 of Act 215 as follows:

Purpose. The legislature finds that while the police currently have authority to order a domestic abuser to stay away from the premises of the victim for up to twelve hours, this period of time is inadequate for the victim to find a safe place to move to and to properly collect belongings. The purpose of this Act is to give the police authority to order the domestic abuser to stay away from the victim's residence for up to twenty-four hours to give the victim more time to move out without again becoming an abused family or household member.

1991 Haw. Sess. L. at 499. As in 1985, the 1991 bill as originally proposed called for a cooling-off period of forty-eight hours. Hse. Stand. Comm. Rep. No. 834, in 1991 House Journal at 1128. The House Judiciary Committee noted that it had received favorable testimony from numerous witnesses that "ample time and opportunity be available to abused spouses in order to obtain a temporary restraining order or to find shelter away from the abusive spouse." *Id.* However, the committee felt that forty-eight hours in every case might be unnecessary, except on weekends and during holidays when it would be

impossible for the abused person to obtain a temporary restraining order because the courts would be closed. *Id.* at 1129.

In urging passage of the 1991 amendments, one legislator observed the following about the evolution of HRS § 709–906 to its current form:

> I find it interesting in the way laws develop and the way the community begins to understand the complexity of problems.
>
> With respect to this particular provision in HRS, when we talked about a cooling[-]off period and we provided twelve hours for a *cooling[-]off period, it was to give Daddy a chance to cool down a little bit, get his head together so when he comes home, he doesn't hit Mama anymore.* Now, truly, we as a society are beginning to recognize that the cooling[-]off period isn't just for Daddy to cool down. *The cooling[-]off period is necessary so that the woman can get a temporary restraining order to keep him away from her so he doesn't continue beating her and the kids.* It's necessary for her to get legal counsel. It's necessary for her to find alternative shelters instead of going into the homeless environment.
>
> And so I strongly support the passage of this measure and commend the good work of the Chairman of the Judiciary Committee who gave recognition, not only to the 24–hour period that's necessary during weekdays, but also with respect to weekends. *If a person is beaten on Friday and there is no service available for her—a legal protection or attorneys or shelters— that that protection goes to her the entire weekend and gives her all of Monday to begin looking for help.*
>
> Yes, I do believe that this is a big step forward and that, finally, we are beginning to realize how terribly dangerous this crime is and that it is no longer a crime just between husband and wife, but an anathema to the entire society that must be dealt with seriously.

1991 House Journal at 326–27 (emphases added).

In light of the foregoing legislative history, we conclude that the protections of a police order to leave the premises under HRS § 709–906(4) were not intended to be applied only in situations where the physical abuse or harm was so recent that the parties were still embroiled in the heat of the abusive confrontation. The legislature had two primary purposes in enacting the statute as it currently exists: (1) to separate the abused and abusive parties to allow tempers to cool and to prevent further abuse against the abused party; and (2) to allow the abused party time to seek a temporary restraining order or alternative shelter. The legislature also recognized that domestic violence was a growing community problem and desired to provide the police with the resources to protect the abused spouse or household member from escalating violence which might result in that individual's death or serious injury.

Construing the term "recent physical harm or abuse" in the context of the entire statute and in a manner consistent with the purposes of the statute, *see Mezurashi*, 77 Hawai'i at 97, 881 P.2d at 1243, we conclude that the alleged abuse or harm inflicted less than one day earlier was "recent" under HRS § 709–906. We also conclude that there was ample evidence to show that when the police issued the warning citation to Defendant on Saturday, January 23, 1993, they did have reasonable grounds to believe that Defendant had inflicted recent physical abuse or harm on Complainant, a member of Defendant's household.

B. *Element 2—Reasonable Grounds for Belief of Probable Danger of Further Physical Abuse or Harm Being Inflicted*

 In issuing a warning citation to Defendant under HRS § 709–906, the police were also required to have "reasonable grounds to believe that there [was] probable danger of further physical abuse or harm being inflicted" upon Complainant by Defendant. There was clearly substantial evidence in the record to satisfy this element.

The evidence revealed that on Saturday, January 23, 1993, when Officers Welsh and Zarriello arrested Defendant for abuse of a family or household member, Complainant

became agitated and repeated the fears she had expressed the previous day—that Defendant would have her killed for reporting the alleged abuse to the police. On the previous day, Officer Zarriello had witnessed the injuries allegedly inflicted on Complainant by Defendant. Based on the record, there was clearly sufficient evidence to support the trial court's finding that the officers had reasonable grounds or probable cause to believe that there was probable danger of further physical abuse or harm being inflicted on Complainant, thus warranting separating Defendant from Complainant. Therefore, the trial court did not err in finding that the order to leave the premises was lawfully issued.

### III. The Vagueness or Overbreadth of HRS § 709–906(4)

We find no merit to Defendant's contention that HRS § 709–906(4) is unconstitutionally vague or overbroad.[4]

 The standard for addressing claims that a criminal statute is void for vagueness under the Hawai'i and United States constitutions was synthesized by the Hawai'i Supreme Court in *State v. Lee,* 75 Haw. 80, 856 P.2d 1246 (1993), as follows:

> [C]laims that a criminal statute is unconstitutionally vague [under the Hawai'i Constitution are treated] as essentially facial attacks, subject to the following standard:
>
> > Due process of law requires that a penal statute state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or the statute is void for vagueness. *State v. Kameenui,* 69 Haw. 620, 621, 753 P.2d 1250, 1251 (1988). Statutes must give the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibit-

ed so that he or she may choose between lawful and unlawful conduct. *Id.*

*State v. Tripp,* 71 Haw. 479, 482, 795 P.2d 280, 282 (1990). This standard is essentially indistinguishable from the applicable standard under federal law.

\* \* \*

> [U]nder the applicable federal law, a criminal statute is void for vagueness unless: it 1) "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly[;]" and 2) "provide[s] explicit standards for those who apply" the statute, in order to avoid "arbitrary and discriminatory enforcement" and the "delegat[ion]" of basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis[.]" *Grayned v. City of Rockford,* 408 U.S. 104, 108–09 [92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222] (1972).

*Id.* at 92–93, 856 P.2d at 1254.

Defendant does not contend that HRS § 709–906(4) is void for vagueness under the first prong of the federal test. This is understandable since HRS § 709–906(1) simply and clearly provides that "[i]t shall be unlawful for any person ... to refuse compliance with the lawful order of a police officer under subsection (4)[,]" and the warning citation issued to Defendant by a police officer under subsection (4) specifically ordered Defendant to stay away from the premises for a specified period and informed him of the consequences if he violated the order.

Defendant maintains, however, that HRS § 709–906(4) is void for vagueness under the second prong of the vagueness test. Specifically, Defendant claims that the statute does

---

4. Plaintiff–Appellee State of Hawai'i argues that since Defendant failed to challenge the constitutionality of HRS § 709–906 at the trial below, this court is precluded from addressing the issue. While a reviewing court generally will not address the constitutionality of a statute where the issue is raised for the first time on appeal, *State v. Ildefonso,* 72 Haw. 573, 827 P.2d 648 (1992), an appellate court may deviate from the general rule where justice requires. *Fujioka v. Kam,* 55 Haw. 7, 9, 514 P.2d 568, 570 (1973). "[I]n the exercise of this discretion an appellate court

should determine whether the consideration of the issue requires additional facts, whether the resolution of the question will affect the integrity of the findings of fact of the trial court; and whether the question is of great public import." *Id.* Because the determination of Defendant's challenge to the constitutionality of HRS § 709–906 does not involve any material factual issue, and the constitutionality of the statute against domestic violence is of great public import, we will consider Defendant's claim even though it was raised for the first time before this court.

not set forth any explicit standards for determining what constitutes "reasonable grounds" to believe that there was recent physical abuse or harm, and therefore, the statute vests "virtually unbridled discretion" upon responding police officers and trial court judges in enforcing the statute.

■ We disagree. The "reasonable grounds" standard embodied in subsection (4) of HRS § 709–906 is an objective standard requiring a trial court to independently assess the facts and circumstances presented to responding police officers to determine whether a reasonable officer would have believed, based on such facts and circumstances, that recent physical abuse or harm had occurred and was likely to recur, thus warranting the issuance of a warning citation.

■ In this case, the record indicates that the trial court considered thoroughly the objective facts and circumstances which the responding officers had before them in determining to issue the warning citation. These facts and circumstances—Complainant's claim that she had been struck by Defendant with a walkman and was afraid Defendant would kill her, the physical evidence of the abrasions on Complainant's head, and Complainant's distraught and crying behavior on both days—were sufficient indicators that Complainant had been recently physically abused or harmed, thus providing reasonable grounds for an officer to believe that a warning citation should be issued. The statute, therefore, did not subject Defendant to arbitrary application or enforcement of its provisions. *Cf. State v. Lee, supra* (holding that the statute making it "unlawful for any person to deliver ... drug paraphernalia, knowing, or under circumstances where one *reasonably should know,* that it will be used to ... introduce into the human body a controlled substance" was not void for vagueness) (emphasis added).

We also reject Defendant's claim that HRS § 709–906(4) is unconstitutionally overbroad.

■ A statute is unconstitutionally overbroad when, although it is clear and precise in its terms, it "sweep[s] so broadly that constitutionally protected conduct as well as unprotected conduct is included in its proscriptions." *State v. Gaylord,* 78 Hawai'i 127, 142, 890 P.2d 1167, 1182 (1995) (quoting *State v. Kaneakua,* 61 Haw. 136, 143, 597 P.2d 590, 594 (1979)).

■ Defendant concedes that "the suppression of family violence is a legitimate state objective," and acknowledges that in *State v. Kameenui,* 69 Haw. 620, 753 P.2d 1250 (1988), the Hawai'i Supreme Court expressly held that "HRS § 709–906 is not unconstitutionally overbroad" because "[t]here is no constitutionally protected right to remain free in your home after physically harming someone residing there." *Id.* at 623, 753 P.2d at 1252. Defendant argues, however, that a person can be subject to penalties under HRS § 709–906 based purely on false out-of-court statements made to a police officer that the person abused a family or household member, and therefore, the statute encompasses noncriminal conduct as well as criminal conduct in its proscriptions. As we have indicated previously, however, the cooling-off warning citation must be based on objective reasonable grounds to believe that a defendant inflicted recent physical abuse or harm on a family or household member. Therefore, contrary to Defendant's allegation, a warning citation cannot be issued purely on a complainant's claim that he or she was beaten or abused. There must be other objective facts and circumstances which would warrant a reasonable police officer to believe the complainant's claim.

## IV. *Defendant's Right to Enter the Premises with Police Escort*

■ We are troubled by one issue raised by the facts in this case, which, although not mentioned as a ground for this appeal, prompts us, *sua sponte,* to remand this case for further proceedings. According to the record, after Defendant received the warning citation, he returned to his home to get his clothing. HRS § 709–906(4)(b) states specifically that "the police officer *may* lawfully order the [abusive] person to leave the premises for a cooling[-]off period of twenty-four hours; *provided* that the person *is allowed to enter the premises with police escort to col-*

*lect any necessary personal effects* [.]" (Emphases added.)

On its face, the statute conditions the authority of a police officer to order a person to leave his or her premises on that person's being allowed to enter the premises with police escort for the purpose of retrieving personal effects. However, there is no indication in the record that Defendant was ever orally advised of his statutory right to enter his home with a police escort to retrieve his personal effects, including his clothing. Moreover, the written warning citation issued to Defendant did not provide him with such information.

As our earlier discussion of the legislative history of HRS § 709–906 indicates, the legislature struggled over the years with the issue of the length of time that was appropriate for a cooling-off period in domestic violence situations. While the legislature recognized the need to separate the abusive and abused parties to allow the abusive party time to cool off and the abused party time to seek help, the legislature also recognized that a financial and practical hardship could be imposed on the abusive party if the cooling-off period were too long.

In 1985, for example, the legislature refused to lengthen the cooling-off period to forty-eight hours, rationalizing that such a period "may create an unjustifiable financial hardship if the alleged abuser is forced to resort to renting a room to stay overnight; it may also create an unjustifiable practical hardship if the alleged abuser is prevented from picking up a change of clothes for that long period of time." Sen. Stand. Comm. Rep. No. 67, in 1985 Senate Journal at 932. These same concerns prompted the legislature, in 1991, to amend the statute to specifically provide that the person subject to a cooling-off period be allowed to enter the premises with a police escort to collect any necessary personal effects. Hse. Conf. Comm. Rep. No. 40, in 1991 House Journal at 788; Sen. Conf. Comm. Rep. No. 40, in 1991 Senate Journal at 759; Sen. Conf. Comm. Rep. No. 853, in 1991 Senate Journal at 1059.

Since the statute clearly allowed Defendant to return to his home with a police escort to retrieve "any necessary personal effects[,]" including his clothing, we believe the police should have advised Defendant of that right, particularly in this instance where Defendant's cooling-off period was enlarged, by operation of HRS § 709–906(4)(c), to fifty-five hours and fifteen minutes.

## CONCLUSION

Based on the foregoing discussion, we hereby remand this case to the Family Court of the First Circuit, with instructions that the court conduct further proceedings to determine whether Defendant was informed of his right under HRS § 709–906(4)(b) to enter his home with a police escort to retrieve his personal effects. If Defendant was so informed and nevertheless entered his home without waiting for a police escort, we affirm the January 29, 1993 judgment convicting Defendant for failure to comply with the lawful order of a police officer. If Defendant was not informed of that right, we reverse the January 29, 1993 judgment.