**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000119
17-JUN-2022
08:12 AM
Dkt. 50 MO**

NO. CAAP-21-0000119

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

JOHNATHEN SWAIM, also known as Jonathen Swaim and
Jonathan Swaim, Petitioner-Appellant, v.
STATE OF HAWAIʻI, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1PR171000013; 1PC101001235)

MEMORANDUM OPINION
(By: Ginoza, C.J., and Wadsworth and Nakasone, JJ.)

Petitioner-Appellant Johnathen Swaim, also known as Jonathen Swaim and Jonathan Swaim (**Swaim**), appeals from the February 21, 2021 "Findings of Fact, Conclusions of Law, and Order Denying Petition to Vacate, Set Aside or Correct Judgment Pursuant to Rule 40 of the Hawaiʻi Rules of Penal Procedure, [(**HRPP**)] Filed July 12, 2017" (**Order Denying Rule 40 Petition**), entered in the Circuit Court of the First Circuit (**Circuit Court**).[1/]  For the reasons explained below, we affirm the Order Denying Rule 40 Petition.

## I. Background

On October 7, 2010, after pleading no contest, Swaim was adjudged guilty of Burglary in the First Degree (**Burglary One**), in violation of Hawaii Revised Statutes (**HRS**) § 708-810(1)(c) (1993).  As further explained below, Swaim was sentenced on January 18, 2011, to five years probation, with one

---

[1/]     The Honorable Matthew J. Viola presided.

year incarceration as a special condition, subject to early release to participate in substance abuse treatment. Pursuant to an Order of Resentencing; Revocation of Probation, entered on February 7, 2013, Swaim's probation was revoked and he was resentenced to, *inter alia*, a ten-year term of incarceration on the Burglary One conviction.

On July 12, 2017, Swaim filed a "Petition to Vacate, Set Aside, or Correct Judgment Pursuant to Rule 40 of the [HRPP]" (**Petition**), initiating case no. 1PR171000013. On June 27, 2018, the Circuit Court entered an order denying the Petition without a hearing (**June 27, 2018 Order**).[2] Swaim appealed from the June 27, 2018 Order, initiating appellate case number CAAP-18-0000589.

In a summary disposition order (**SDO**), this court affirmed in part and vacated in part the June 27, 2018 Order. Swaim v. State (Swaim I), No. CAAP-18-0000589, 2020 WL 1698792, at *3 (Haw. App. Apr. 7, 2020). We vacated that part of the order denying without a hearing Swaim's claim that his counsel was ineffective for advising him to plead no contest, and affirmed the order in all other respects. Id. at *2-3. We remanded the case for an evidentiary hearing on Swaim's ineffective-assistance-of-counsel claim, which we construed to encompass Swaim's contentions that: (1) "[Swaim] received ineffective assistance of counsel because, had his counsel not encouraged him to change his plea to no contest, the charge would have been dismissed or he would have been found not guilty"; and (2) "[Swaim's] plea was coerced and he was forced to change his plea by counsel[.]" Id. at *1.

On remand, the Circuit Court held an evidentiary hearing on Swaim's claims on January 15, 2021. Swaim and his former trial counsel, Deputy Public Defender Edward K. Harada (**Harada**), testified. The court found Harada's testimony to be credible. Several exhibits were received into evidence.

On February 21, 2021, the Circuit Court issued the Order Denying Rule 40 Petition. The following findings of fact (**FOFs**), among others, are unchallenged on appeal and are thus

---

[2] The Honorable Edwin C. Nacino presided.

binding on the parties and this court, see State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019):

> 1.    On August 1, 2010, . . . Swaim . . . was arrested for the offense of Burglary in the First Degree.
>
> 2.    On August 3, 2010, [Respondent-Appellee] State of Hawaiʻi [(**State**)] filed a Felony Information against [Swaim] for the class B felony offense of Burglary in the First Degree under Case No. 1PC101001235.
>
> 3.    On August 9, 2010, [Swaim] was in custody and appeared at an arraignment and plea hearing.  He entered a plea of "not guilty" to Burglary in the First Degree charge.
>
> 4.    At the time [Swaim] was arrested and charged with the Burglary in the First Degree offense, he was already serving a five year term of felony HOPE probation based on his conviction for the class C felony offense of Negligent Injury in the First Degree (Case No. 1PC061000407).
>
> 5.    Judge Steven Alm was the circuit court judge assigned to [Swaim's] HOPE probation case.  After [Swaim] was initially sentenced to a five year term of probation in 2009, on April 21, 2010, Judge Alm granted a motion to revoke [Swaim's] probation and resentenced him to another five year term of probation.
>
> 6.    On August 19, 2010, [Swaim] was released from custody at the Oʻahu Community Correctional Center after posting the requisite bond.
>
> 7.    On August 30, 2010, the court appointed The Office of the Public Defender as defense counsel in Case No. 1PC101001235. Deputy Public Defender . . . Harada . . . was assigned to the case.  Mr. Harada was a very experienced criminal trial attorney.  He had been a trial attorney with the Office of the Public Defender since 1984 and had handled several thousand criminal cases, including dozens involving the charge of Burglary in the First Degree.
>
> 8.    The burglary case was assigned to Judge Randal K.O. Lee for trial.  A pretrial conference was set for September 15, 2010, a trial call was set for September 30, 2010, and a trial was set for the week of October 11, 2010.
>
> 9.    Between August 30, 2010, and September 30, 2010, Mr. Harada received, reviewed and evaluated the discovery, including the police reports, made an initial evaluation of the case, including possible defenses, and determined that no pretrial motions needed to be filed.  Based on his review of the discovery, Mr. Harada formed an opinion that the case was "triable", because [Swaim] had possible defenses, including reasonable doubt as to intent/knowledge and mistake of fact and the possibility of the lesser included offense of trespass.  Mr. Harada also apprised himself of [Swaim's] HOPE probation case, in which the Office of the Public Defender also represented [Swaim].
>
> 10.    Between August 30, 2010, and September 30, 2010, Mr. Harada sent correspondence to [Swaim's] address and attempted to make contact with [Swaim] to set up an in-person meeting to discuss [Swaim's] pending cases.  A meeting was set for September 16, 2010, but [Swaim] failed to appear for the meeting.

11. On September 15, 2010, Mr. Harada appeared before Judge Lee for a pretrial conference. The State . . . was represented by Deputy Prosecuting Attorney Amy Murakami. At the conclusion of the pretrial conference, Judge Lee told counsel that if [Swaim] pled to the burglary charge, he was inclined to sentence [Swaim] to probation with no further imprisonment if [Swaim] obtained substance abuse trea[t]ment.

12. On September 15, 2010, following the pretrial conference before Judge Lee, Mr. Harada and Ms. Murakami met with Judge Alm to discuss [Swaim's] HOPE probation case, because the outcome of the burglary case had the potential to impact [Swaim's] status on HOPE probation.

13. At the conference, Judge Alm initially indicated his strong inclination that he would revoke [Swaim's] HOPE probation, due to [Swaim's] poor performance on probation, and resentence him to a open five year term of imprisonment - even if [Swaim] were acquitted on the Burglary in the First Degree charge.

14. After Mr. Harada advocated strongly for [Swaim] to be given another opportunity on probation, Judge Alm changed his initial inclination and told counsel that, if [Swaim] pled to the burglary case, he would revoke [Swaim's] probation, but resentence him to another term of HOPE probation, as long as [Swaim] entered into a residential substance abuse treatment program. Based on Mr. Harada's experience with Judge Alm, he believed that Judge Alm would follow this inclination when [Swaim] was resentenced.

15. On September 30, 2010, Mr. Harada and [Swaim] appeared before Judge Lee for trial call. Because this was the first in person meeting Mr. Harada had had with [Swaim] and he believed he was not ready to proceed to trial, Mr. Harada requested a continuance. [Swaim] objected to Mr. Harada's request for a continuance and to waiving time under [HRPP] Rule 48. Mr. Harada asked Judge Lee for permission to withdraw as [Swaim's] counsel. His request was not granted, but Judge Lee set a further trial call on October 7, 2010.

16. Prior to October 7, 2010, Mr. Harada met in person with [Swaim] on at least two occasions. The meetings each lasted over an hour. During those meetings, Mr. Harada and [Swaim] discussed the burglary case in depth and Mr. Harada answered [Swaim's] questions. Mr. Harada informed [Swaim] of the elements of Burglary in the First Degree offense, and provided him with a printout of the Westlaw annotation of the Burglary in the First Degree statute. He reviewed the facts of the case and provided [Swaim] with a copy of the police reports. He also explained possible defenses to the charge, including reasonable doubt as to intent/knowledge and mistake of fact and the possibility of the lesser included offense of trespass. Because [Swaim] had been drinking alcohol on the day of the alleged offense (which was in violation of the terms and conditions of his probation in his negligent injury case), Mr. Harada also discussed the impact of the statute precluding admission of evidence of self-induced intoxication and provided [Swaim] with a printout of the Westlaw annotation of the relevant statute. Mr. Harada explained to [Swaim] that although he believed the burglary case was "winnable", he never guaranteed such an outcome to [Swaim].

17. Mr. Harada also informed [Swaim] of the

4

sentencing/resentencing inclinations Judges Lee and Alm had provided at the September 15, 2010 conferences. He explained to [Swaim] that based on Judge Alm's statements, he risked being resentenced and sent to prison in his HOPE case, if he went to trial and was acquitted in the burglarly case, but that if he pled to the burglary charge, Judge Alm was inclined to resentence him to another term of probation on the condition that he complete a residential substance abuse treatment program. One of [Swaim's] most pressing concerns was avoiding a prison term.

18. Accordingly, Mr. Harada advised [Swaim] that in his opinion, even though the burglarly case was "winnable", given the sentencing/resentencing inclinations of probation provided by Judges Alm and Lee if he changed his plea in the burglary case, the "smart play" would be to plead no contest in the burglary case, as this would likely result in him being placed/replaced on probation and avoiding a prison term. Mr. Harada told [Swaim], however, that the choice to go to trial in the burglarly case or to change his plea was his alone to make.

19. During a meeting on October 6, 2010, [Swaim] informed Mr. Harada that he had decided to follow Mr. Harada's advice and to change his plea to "no contest" in the burglary case. Mr. Harada prepared a change of plea form, reviewed it with [Swaim], and [Swaim] and Mr. Harada signed the form.

20. On October 7, 2010, [Swaim] and Mr. Harada appeared before Judge Lee for a further trial call. At a bench conference, Judge Lee informed counsel that he intended to follow his sentencing inclination that he had informed counsel of at the September 15, 2010 pretrial conference. [Swaim] changed his plea to "no contest." Following a colloquy with [Swaim] regarding his change of plea, Judge Lee accepted the plea, finding that [Swaim] had entered his plea and waived his right to a trial knowingly, intelligently and voluntarily. He adjudged [Swaim] guilty of the offense of Burglar[]y in the First Degree and set sentencing for January 18, 2011. Judge Lee also informed [Swaim] of his inclination to sentence him to probation with no additional jail provided that he entered into treatment for alcohol abuse.

21. In its Summary Disposition Order entered on April 7, 2020 . . ., the Intermediate Court of Appeals . . . found/concluded that [Swaim's] "claim that he did not knowingly and intelligently enter his no contest plea is without merit."

22. On or about October 15, 2010, a Motion for Revocation of Probation was filed in Case No. 1PC061000407. This was the second motion for revocation that had been filed in the case. [Swaim] was taken into custody.

23. Prior to January 18, 2011, Mr. Harada made efforts to secure a residential substance abuse treatment program for [Swaim] by applying [Swaim] for acceptance into the Sand Island Treatment Center and keeping updated as to the status of [Swaim's] application.

24. On January 18, 2011, Judge Lee followed his prior sentencing inclination and instead of sending [Swaim] to prison to serve his open ten year term he sentenced [Swaim] to five years of HOPE probation with terms and conditions, which included serving one year of jail with

5

early release to a substance abuse treatment program.

25.   On January 18, 2011, [Swaim] appeared before Judge Alm for a hearing on the Motion for Revocation of Probation that had been filed on October 15, 2010.  The motion was granted and Judge Alm also followed his prior resentencing inclination and instead of sending [Swaim] to prison to serve his open five year term he resentenced [Swaim] to another five year term of HOPE probation, with one year of jail subject to early release to a substance abuse treatment program.

26.   Between being sentenced on January 18, 2011, and May 5, 2011, Mr. Harada continued his efforts to secure [Swaim's] acceptance and admission into a residential substance abuse treatment program.  These efforts included submitting applications to and contacting treatment programs such as Hina Mauka and Ho'omau Ke Ola and maintaining contact with [Swaim's] probation officer Dwight Sakai to confi[r]m what treatment programs would be acceptable to Mr. Sakai.  On or about May 5, 2011, [Swaim] was accepted and admitted into the Ho'omau Ke Ola residential substance abuse treatment program.

27.  After May 5, 2011, Mr. Harada relinquished control over [Swaim's] cases to deputy public defenders in his office who were handling HOPE probation cases.

28.   On January 8, 2013, the Office of the Public Defender withdrew from representation of [Swaim] and Richard Sing was appointed by the court as legal counsel for [Swaim].

29.   On February 6, 2013, motions for revocation of [Swaim's] probation in both cases were granted, and [Swaim] was resentenced to the indeterminate terms of imprisonment of ten years in the burglary case and five years in the negligent injury case.

(Some emphasis added.)

Based on these unchallenged findings, the Circuit Court reached the following conclusions, among others, which we construe as conclusions of law (**COLs**):

39.  [Swaim] has failed to meet his burden of establishing that Mr. Harada rendered ineffective assistance of counsel.

40.  [Swaim] has not established any specific errors or omissions by Mr. Harada that reflect Mr. Harada's lack of skill, judgment, or diligence in the handling of [Swaim's] cases.

41.  Mr. Harada's advice to [Swaim] was within the range of competence demanded of attorneys in criminal cases.

42.  Mr. Harada did not provide ineffective assistance of counsel to [Swaim].

43.  [Swaim] entered his no contest plea to the charge of Burglary in the First Degree in Case No. 1PC101001235 voluntarily.

44.  Mr. Harada did not coerce, threaten, or force [Swaim] to enter his no contest pleas to the charge of

6

Burglary in the First Degree in Case No. 1PC101001235.
Accordingly, the Circuit Court concluded that Swaim's claims were without merit and denied the Petition.  This appeal followed.

## II.  Points of Error

On appeal, Swaim contends that the Circuit Court erred in ruling that:  (1) Swaim did not receive ineffective assistance of counsel; and (2) Swaim's no contest plea was not obtained through coercion.  Relatedly, Swaim appears to challenge COLs 39 through 44.

## III.  Standards of Review

"A trial court's conclusions of law are reviewed de novo under the right/wrong standard."  State v. Adler, 108 Hawaiʻi 169, 174, 118 P.3d 652, 657 (2005).  "The denial of a Rule 40 petition based on the [circuit] court's conclusions of law is reviewed de novo."  Schwartz v. State, 136 Hawaiʻi 258, 262, 361 P.3d 1161, 1165 (2015) (citing Coulter v. State, 116 Hawaiʻi 181, 184, 172 P.3d 493, 496 (2007)).

## IV.  Discussion

### A.  Ineffective Assistance Claim

Swaim contends that his Burglary One conviction must be vacated because he received ineffective assistance of counsel from Harada.

"The standard for determining the adequacy of counsel's representation is whether, when viewed as a whole, the assistance provided is 'within the range of competence demanded of attorneys in criminal cases.'"  State v. Salavea, 147 Hawaiʻi 564, 576, 465 P.3d 1011, 1023 (2020) (quoting State v. Cordeiro, 99 Hawaiʻi 390, 405, 56 P.3d 692, 707 (2002)).  The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test:  "First, a defendant must show that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence."  Id. (citing State v. Antone, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980)).  "Second, the defendant must establish that these errors or omissions resulted

7

in either the withdrawal or substantial impairment of a potentially meritorious defense." Id. (citing Antone, 62 Haw. at 348-49; 615 P.2d at 104).

> Specific actions or omissions that are alleged to be erroneous but that had an obvious tactical basis for benefiting the defendant's case will not be subject to further scrutiny. State v. Pacheco, 96 Hawaiʻi 83, 93, 26 P.3d 572, 582 (2001). If, however, the alleged error or omission had no obvious basis for benefiting the case and resulted in the withdrawal or impairment of a potentially meritorious defense, then the assistance of defendant's counsel was constitutionally inadequate. State v. Smith, 68 Haw. 304, 309-11, 712 P.2d 496, 500-01 (1986).

Id. (footnote omitted); see Briones v. State, 74 Haw. 442, 463, 848 P.2d 966, 977 (1993) ("An informed, tactical decision will rarely be second-guessed by judicial hindsight.").

Swaim argues that Harada was ineffective because, "[r]ather than focusing his skill, judgment, and diligence on helping . . . Swaim fight and beat the Burglary [One] charge," Harada was instead focused on Swaim's prior negligent injury case, and "pleasing Judge Alm" in that case. Swaim argues that he did not commit the crime of Burglary One, and that by not "presenting a meritorious defense, taking the case to trial, or attempting to downgrade the Burglary [One] charge to a Trespass," Harada made "specific errors" constituting ineffective assistance of counsel, and Swaim "received a harsher outcome" as a result.

However, the unchallenged FOFs, which are binding on this court (see supra), do not support Swaim's arguments. As reflected in FOF 17, one of Swaim's "most pressing concerns" was avoiding a prison term. Even acquittal on the Burglary One charge would likely not have alleviated that concern, as Judge Alm had indicated to Harada the court's "strong inclination" to revoke Swaim's HOPE probation in the negligent injury case, and resentence him to an open five year term of imprisonment, even if Swaim were acquitted on the Burglary One charge. See FOFs 12, 13. It was only after Harada "advocated strongly for [Swaim] to be given another opportunity on probation" that "Judge Alm changed his initial inclination and told counsel that, if Swaim pled to the burglary case, he would revoke [Swaim's] probation, but sentence him to another term of HOPE probation, as long as

8

[Swaim] entered into a residential substance abuse treatment program. FOF 14. Judge Lee had also "told counsel that if [Swaim] pled to the burglary charge, he was inclined to sentence [Swaim] to probation with no further imprisonment if [Swaim] obtained substance abuse trea[t]ment." FOF 11.

It was in this context that Harada "discussed the burglary case in depth" with Swaim, "answered [Swaim's] questions[,]" "reviewed the facts of the case," and "explained possible defenses to the [Burglary One] charge[.]" FOF 16. And it was in this context that Harada advised Swaim that even though the burglary case was "winnable," given the sentencing and resentencing inclinations of Judges Lee and Alm if Swaim changed his plea in the burglary case, "the 'smart play' would be to plead no contest in the burglary case, as this would likely result in him being placed[] on probation and avoiding a prison term." FOF 18. Harada told Swaim, however, that "the choice to go to trial in the burglary case or to change his plea was his alone to make." Id.

On this record, we conclude that Swaim has not shown any specific errors or omissions by Harada that reflect a lack of skill, judgment, or diligence in representing Swaim. We further conclude that COLs 39 through 42 are not wrong. Accordingly, the Circuit Court did not err in concluding that Swaim failed to meet his burden of establishing that Harada rendered ineffective assistance of counsel.

## B. Coercion Claim

Swaim contends that his Burglary One conviction must be vacated because his no contest plea was obtained through coercion. He argues that he did not commit the crime of Burglary One and was coerced by Harada to change his plea to no contest "or else Mr. Swaim was going to go to prison for five years based on his prior Negligent Injury charge."[3/]

_____

[3/] In his opening brief, Swaim also appears to suggest that Judge Alm coerced him to enter his no contest plea in the burglary case. Swaim did not raise this claim in the Petition or accompanying Memorandum of Law, which referred only to the Honolulu Prosecutor's Office and Swaim's "public defender" in connection with Swaim's coercion claim. Similarly, Swaim did not contend in his prior appeal that Judge Alm coerced him. Accordingly, in Swaim

9

The unchallenged FOFs do not support Swaim's argument that Harada coerced him to enter his no contest plea. Rather, the FOFs reflect that Harada informed Swaim of the sentencing and resentencing inclinations that Judges Lee and Alm, respectively, had provided at the September 15, 2010 conferences, and explained the risk of Swaim's being sent to prison in the negligent injury case. FOF 17. Given these circumstances and Swaim's pressing concern about a prison term, Harada advised Swaim that the "smart play" would be to plead no contest in the burglary case, which would likely avoid a prison term. FOF 18. However, Harada told Swaim that the decision was his alone to make.[4] Id. Swaim subsequently informed Harada that he had decided to follow Harada's advice and change his plea to no contest in the burglary case. FOF 19. Swaim points to no specific evidence in the record supporting his argument that Harada coerced or forced him to enter his no contest plea.[5] See HRAP Rule 28(b)(7).

On this record, we conclude that the Circuit Court did not err in concluding that Harada did not coerce, threaten or force Swaim to enter his no contest plea to the Burglary One charge. We further conclude that COLs 43 and 44 are not wrong.[6]

## V. Conclusion

For the reasons discussed above, the February 21, 2021 "Findings of Fact, Conclusions of Law, and Order Denying Petition

---

I, this court remanded the case for an evidentiary hearing on Swaim's contention that "his plea was coerced and he was forced to change his plea by counsel." Swaim I, 2020 WL 1698792, at *1 (emphasis added). Swaim's new argument regarding Judge Alm was waived. See HRPP Rule 40(a)(3).

[4] At the evidentiary hearing, when Harada was asked if he forced or pressured Swaim to make the decision to plead no contest, Harada tesified, "No." When asked if he threatened Swaim in any way to choose to plead no contest, Harada answered, "No." When asked if Judge Alm forced, threatened, or coerced Swaim, Harada answered, "Judge Alm had no contact to my knowledge with . . . Swaim up to this date[,]" i.e., October 7, 2010, when Swaim pled no contest to the Burglary One charge.

[5] In Swaim I, we concluded that Swaim's claim that he did not make his no contest plea knowingly and intelligently was without merit. 2020 WL 1698792, at *1. Swaim did not seek certiorari review of this court's SDO regarding this ruling, thus waiving any argument not related to his claims that Harada provided ineffective assistance and coerced him to enter the plea.

[6] To the extent that COL 44 is a mixed determination of fact and law, it is supported by substantial evidence and is not clearly erroneous.

to Vacate, Set Aside or Correct Judgment Pursuant to Rule 40 of the Hawaiʻi Rules of Penal Procedure, Filed July 12, 2017," entered in the Circuit Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, June 17, 2022.

On the briefs:

Jonathan E. Spiker
(Koshiba & Price)
for Petitioner-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Respondent-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Clyde J. Wadworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge